633 So.2d 903 (1994)
Silvester E. BRUMFIELD
v.
Alcee M. GUILMINO, Mark P. Carnesi, James B. Webb and State Farm Mutual Automobile Insurance Company.
No. CA 93 0366.
Court of Appeal of Louisiana, First Circuit.
March 11, 1994.
*906 Emery Norton Voorhies, Ward & Clesi, Covington, for defendant-appellant Alcee M. Guilmino.
Harry P. Pastuszek, Jr., James E. Moorman, Muller & Pastuszek, Mandeville, for plaintiff-appellee Silvester E. Brumfield.
Before CARTER, GONZALES and WHIPPLE, JJ.
WHIPPLE, Judge.
This case is before us on appeal from a judgment in favor of plaintiff, Silvester E. Brumfield, and against defendant, Alcee M. Guilmino, awarding plaintiff damages. From this judgment, defendant appeals. We affirm.

FACTS
This lawsuit arises from an automobile collision which occurred on October 5, 1986, in St. Tammany Parish, Louisiana. On that date, at approximately eight o'clock p.m., Brumfield was operating a 1981 Buick Skylark southbound on Louisiana Highway 25. Guilmino, the operator of a 1979 Ford pick-up truck, owned by Mark P. Carnesi, was travelling northbound on Louisiana Highway 25. The first collision occurred when Guilmino fell asleep at the wheel and crossed the centerline of the highway, colliding head-on with the Brumfield vehicle. Shortly thereafter, James B. Webb, travelling southbound on Louisiana Highway 25, approached the accident scene and side-swiped the Brumfield vehicle, ultimately striking the Guilmino vehicle. As a result, Brumfield sustained serious personal injuries.

PROCEDURAL HISTORY
Brumfield filed a suit for damages against Guilmino, Carnesi, Webb, and State Farm Mutual Automobile Insurance Company (State Farm), the liability insurer of the Carnesi and Webb vehicles. Prior to trial, plaintiff dismissed Carnesi, without prejudice. Plaintiff also dismissed Webb and State Farm, in its capacity as Webb's insurer, with prejudice. State Farm was subsequently dismissed from the litigation when the trial court granted its motion for summary judgment.[1] Accordingly, the matter proceeded to trial against Guilmino only. Plaintiff's claim against Guilmino was for compensatory damages as well as exemplary damages, pursuant to LSA-C.C. art. 2315.4.[2]
The matter was tried before a jury on June 22, 23 and 24, 1992. Following trial, the jury rendered a verdict in favor of plaintiff, assessing 90% fault to Guilmino and 10% fault to Webb. Compensatory damages were awarded as follows:

Past pain and suffering, mental
 anguish, loss of enjoyment of
 life, disability and other general
 damages.............................$120,000.00
Future pain and suffering, mental
 anguish and other general
 damages.............................$240,000.00
Past medical expenses.................$ 61,000.00
Future medical expenses...............$ 75,000.00
Impairment of future earning capacity
......................................$ 50,000.00

The jury also awarded $150,000.00 as exemplary damages.
The trial court signed an initial judgment on July 14, 1992. This judgment awarded *907 plaintiff the total sum of $596,000.00, less $59,600.00, representing Webb's 10% comparative fault. The judgment also provided that plaintiff's award be reduced by an additional $122,780.12, representing the credit due Guilmino for the previous deposits made by State Farm and withdrawn by plaintiff from the registry of the court prior to trial. The judgment further provided that each party bear his own costs.
Guilmino filed a motion for judgment notwithstanding the verdict, or alternatively, for a new trial or remittitur. Brumfield also filed a motion for judgment notwithstanding the verdict, or alternatively, for a new trial. Guilmino's motions were denied. The trial court granted plaintiff's motion and rendered a second judgment to more accurately conform with the jury's verdict. The second judgment was basically the same as the previous judgment, except that the total amount awarded to plaintiff was reduced by $44,600.00, representing a 10% reduction for Webb's fault applied to the award for general and special damages only. The judgment further assessed all costs to Guilmino. From this judgment, Guilmino appeals, asserting the following assignments of error:
1. The jury award for general damages was manifestly erroneous.
2. The jury award for future medical expenses was manifestly erroneous.
3. The jury award for impairment of future earning capacity was manifestly erroneous.
4. The jury award for exemplary damages was manifestly erroneous; alternatively, the amount of the award was manifestly erroneous.
5. The court erred in allowing the jury to hear evidence of Guilmino's convictions of driving while intoxicated, vehicular negligent injuring and driving left of center.
6. The trial court erred in allowing the testimony of plaintiff's family members relative to his condition at the hospital subsequent to the accident and his physical limitations thereafter.
7. The court erred in not applying the 10% reduction, due to the negligence of Webb, to plaintiff's award for exemplary damages.

GENERAL DAMAGES

(Assignment of Error No. 1)
On appeal, defendant contends that the jury's award of $360,000.00 in general damages was an abuse of discretion and should be reduced to the highest appropriate amount. We disagree.
The role of an appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Youn, 623 So.2d at 1260. The discretion vested in the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. Youn, 623 So.2d at 1261.
In this case, plaintiff sustained multiple and severe injuries as a result of the automobile collision. Dr. Mark J. Hontas, plaintiff's treating physician and an expert in the field of orthopedic surgery, testified regarding the injuries sustained by plaintiff. Dr. Hontas testified that he first attended plaintiff in the emergency room at St. Tammany Parish Hospital, immediately following the accident, for the apparent orthopedic injuries plaintiff had sustained in the trauma of the accident. Upon arrival at the emergency room, plaintiff had been treated initially by emergency room general surgeons for a pneumothorax (or punctured lung) and low blood pressure. After the application of *908 "mass trousers" to force blood into the central part of plaintiff's body, both of these conditions had been stabilized before Dr. Hontas' consultation.
From his initial examination and review of x-rays, Dr. Hontas determined that plaintiff had sustained a comminuted diaphyseal fracture of the left femur (described as a shattered mid-thigh bone); an open comminuted supracondylar fracture of the right femur (described as a shattered thigh bone, which was exposed to the air); a fractured pelvis; fractured right hip; fractured right ankle; fractured ribs; and "shattered" knees. To repair the orthopedic injuries, plaintiff underwent three intrusive surgical procedures, two involving general anesthesia and one involving an epidural. Dr. Hontas testified that plaintiff would probably require numerous additional surgeries to his hips and knees, and additional surgery to remove the hardware from his ankle. Dr. Hontas concluded that the injuries suffered by plaintiff were significant and involved "six major weight bearing joints."
Plaintiff was hospitalized for one month following the accident, and required treatment in the hospital's intensive care unit for approximately nine days. Plaintiff testified that the doctors advised him that he might never walk again. Plaintiff stated that although he can walk now, he ambulates abnormally and with difficulty. Plaintiff explained that prior to the accident, he participated in sporting events and church activities, and was generally active socially. Since the accident, he no longer is able to enjoy these activities.
Plaintiff's sister testified at trial that plaintiff has difficulty walking and walks with an outward rotation of one foot, with his knees turned. Plaintiff's mother testified at trial and related that following his release from the hospital, plaintiff stayed at her home and required total care. She stated that plaintiff was unable to feed, bathe, or perform personal hygiene tasks himself. She also testified regarding the pain endured by plaintiff during the course of physical therapy which plaintiff was required to undergo in learning to walk again.
The record amply demonstrates the painful and severe injuries sustained by plaintiff and the profound effect these injuries have had upon his life. After carefully reviewing the record herein, we are unable to conclude that the jury abused its vast discretion in its award for general damages.
This assignment of error is without merit.

FUTURE MEDICAL EXPENSES

(Assignment of Error No. 2)
In this assignment of error, defendant contends that the award for future medical expenses is manifestly erroneous.
Defendant first contends that plaintiff failed to prove an essential element to support the award: namely, that plaintiff would submit to the future medical treatment outlined by his treating physician. According to defendant, because plaintiff did not specifically testify that he would submit to the future surgeries, plaintiff failed to carry his burden of proof. Defendant also argues that plaintiff failed to present evidence regarding the cost of hospital care and physical therapy, and that the jury's award was speculative. We find no merit in these arguments.
In order to recover future medical expenses, the appellate record must establish that future medical expenses will be necessary and inevitable. See Stiles v. K Mart Corporation, 597 So.2d 1012, 1013 (La.1992). An award for future medical expenses will not be supported in the absence of medical testimony that they are indicated and setting out their probable cost. Holliday v. United Services Automobile Association, 569 So.2d 143, 146 (La.App. 1st Cir.1990). Nonetheless, when the record establishes that future medical expenses will be necessary and inevitable, courts should not reject the award on the basis that the record does not provide the exact value of necessary expenses, if the court can examine the record and determine from the evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree would be required. Stiles, 597 So.2d at 1013.
In this case, Dr. Hontas testified that in the future plaintiff would require hip replacement *909 surgery on both hips and knee replacement surgery on both knees. Dr. Hontas stated that the surgeries cannot all be performed at once; thus, plaintiff will need four surgeries, each requiring two weeks of hospitalization. The physician's charges for each surgery will be approximately $4,000.00. Following surgery, plaintiff will need follow-up care and physical therapy. Additionally, plaintiff could require surgery to remove hardware still implanted in his ankle.
The record herein clearly establishes the necessity and inevitability of future medical expenses. The jury awarded plaintiff $61,000.00 in past medical expenses. Indeed, prior to trial, plaintiff underwent four surgical procedures as suggested by his physicians. Considering the record herein, we find no error in the award for future medical expenses. While the jury's award of $75,000.00 might be on the higher end of the scale, we cannot find that the award constituted an abuse of discretion or that the award was speculative.
Secondly, defendant contends the joint replacement surgery outlined by Dr. Hontas would have been required regardless of the accident, due to plaintiff's pre-existing sickle cell anemia. Thus, defendant argues that the jury's award of future medical expenses for the joint replacement surgeries was improper. We disagree.
A plaintiff bears the burden of proving the causal nexus between an accident and injury (damage) by a preponderance of the evidence. Thomas v. Hartford Insurance Company, 540 So.2d 1068, 1074-1075 (La.App. 1st Cir.), writ denied, 542 So.2d 516 (La.1989). A tort-feasor is only liable for damages caused by his negligent act; he is not liable for damages caused by separate, independent or intervening causes of damage. Thomas, 540 So.2d at 1075. However, a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993). When a defendant's tortious conduct aggravates a pre-existing condition, the defendant must compensate the victim for the full extent of the aggravation. Lasha, 625 So.2d at 1006. Before recovery can be granted for an aggravation of a pre-existing condition, a causative link between the accident and the victim's current status must be established. This causation is a question of fact, entitled to great weight, and the determination cannot be disturbed on appeal absent manifest error. Harrigan v. Freeman, 498 So.2d 58, 62 (La.App. 1st Cir.1986).
Dr. Hontas testified that a person with sickle cell anemia faces the possibility of having degenerative changes in the joints, which at some point may require replacement surgery. Dr. Hontas also testified that prior to the accident, plaintiff did have some degenerative changes to the hip joints, and, to a lesser degree, to his knee joints. Nonetheless, Dr. Hontas testified that considering the degree of damage caused by the trauma of the accident, plaintiff would have experienced degenerative changes requiring replacement surgery of both knees and hips, even if he had not suffered from the pre-existing condition. Dr. Hontas testified that the trauma certainly accelerated and/or aggravated any pre-existing condition.
Considering this testimony and the record in its entirety, the jury was not clearly wrong in its conclusion that the accident aggravated plaintiff's pre-existing condition and that plaintiff proved, by a preponderance of the evidence, a causative link between the accident and the victim's current medical condition. The award for future medical expenses is amply supported by the record.
This assignment of error is without merit.

LOSS OF FUTURE EARNING CAPACITY

(Assignment of Error No. 3)
Defendant contends on appeal that the award of $50,000.00 for loss of future earning capacity was manifestly erroneous and should be reversed. Defendant argues that because plaintiff was not employed at the time of the accident, received disability benefits, and had a sporadic work history, he is not entitled to an award for loss of future earning capacity. We disagree.
*910 In determining an award for loss of earning capacity, what the plaintiff earned before and after the injury does not constitute the measure. While plaintiff's earning capacity at the time of injury is relevant, it is not necessarily determinative of his future ability to earn. Hobgood v. Aucoin, 574 So.2d 344, 346 (La.1990). Damages should be estimated on the injured person's ability to earn money, rather than what he actually earned before the injury. Hobgood, 574 So.2d at 346. Earning capacity is not measured by actual loss, and even an unemployed, or sporadically employed plaintiff is entitled to recover for the deprivation of what he could have earned. Landry v. Melancon, 558 So.2d 1143, 1148 (La.App. 1st Cir.1989).
The record contains ample evidence to support the jury's conclusion that prior to the accident and resulting injuries, plaintiff had the capacity to earn money. Notwithstanding the fact that at the time of the accident plaintiff was unemployed or had a sporadic work history, the jury's award of $50,000.00 for loss of future earning capacity is supported by the record.
This assignment of error is without merit.

EXEMPLARY DAMAGES

(Assignment of Error No. 4)
In his fourth assignment of error, defendant asserts that plaintiff failed to establish his entitlement to exemplary damages and that the jury erred in making this award. Defendant further contends that the award was excessive and constitutes an abuse of discretion.
LSA-C.C. art. 2315.4 authorizes an award of exemplary damages, in addition to general and special damages, upon proof of the following three elements:
1. The defendant was intoxicated or had a sufficient quantity of intoxicants to make him lose normal control of his mental and physical facilities;
2. The drinking was a cause-in-fact of the accident; and
3. The injuries were caused by a wanton and reckless disregard for the rights and safety of others.
Minvielle v. Lewis, 610 So.2d 942, 946 (La. App. 1st Cir.1992). Whether these elements exist are questions of fact. See Bourgeois v. State Farm Mutual Automobile Insurance Company, 562 So.2d 1177, 1180 and 1184 (La.App. 4th Cir.), writ denied, 567 So.2d 611 (La.1990). Findings of fact may not be set aside by an appellate court absent manifest error or unless the findings are clearly wrong. Stobart v. State Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
Defendant's deposition was read to the jury, as defendant was not present at the trial. Defendant admitted that he had consumed alcohol prior to the accident, and testified by deposition that he had consumed approximately four beers at his sister's home. Peter Salamankas, the Louisiana State Trooper who investigated the accident, testified by deposition that defendant appeared to have been drinking and was administered a field sobriety test. Trooper Salamankas testified that defendant admitted he had been drinking, stating he had several mixed drinks. Defendant's blood alcohol level was tested after the accident and registered.12%.[3] Dr. Monroe Samuels was accepted by the court as an expert in clinical toxicology and testified at trial. Dr. Samuels testified that in light of the fact that the blood alcohol test was administered at least one hour after the accident, defendant's blood alcohol level at the time of the accident was probably between .13% and .14%. Moreover, Dr. Samuels testified that two mixed drinks or four ten ounce beers would not have resulted in a blood alcohol level of.12%. Instead, Dr. Samuels opined that defendant had probably consumed the equivalent of eight or nine ounces of 86 proof whiskey.
*911 Dr. Samuels also testified that the consumption of alcohol impairs one's ability to operate a motor vehicle, and explained that alcohol consumption often has the effect of inducing light sleep. Defendant testified that he had fallen asleep at the wheel. Dr. Samuels concluded that at the time of the accident, defendant's ability to operate a motor vehicle was impaired and that defendant was incapable of operating a motor vehicle in a safe manner.
When defendant first spoke to Trooper Salamakas, he admitted that he had been drinking mixed drinks. However, in defendant's deposition testimony, defendant testified that he had been drinking beer prior to the accident. Defendant also stated that he had only slept approximately four hours the night before the accident, and that he fell asleep at the wheel due to fatigue rather than due to alcohol consumption.
Considering the above evidence and after a careful review of the record herein, we are unable to conclude that the jury erred in its finding that plaintiff was entitled to exemplary damages. The testimony elicited at trial amply supports the jury's conclusion that defendant was intoxicated or had consumed sufficient quantities of intoxicants to make him lose normal control of his mental and physical facilities, and that defendant's drinking was a cause in fact of the accident. Moreover, we find no manifest error in the jury's conclusion that defendant acted with a wanton or reckless disregard for the rights and safety of others by becoming intoxicated and driving on a public highway.
Defendant contends that the jury's award of $150,000.00 in exemplary damages was excessive. The trier of fact has much discretion in fixing exemplary damage awards. Chinigo v. Geismar Marine, Inc., 512 So.2d 487, 493 (La.App. 1st Cir.), writs denied, 514 So.2d 457 (La.1987). After considering all of the facts and circumstances of this case, we conclude that the jury did not abuse its much discretion in awarding the sum of $150,000.00 as exemplary damages.
This assignment of error also is without merit.

EVIDENTIARY RULINGS BY THE TRIAL COURT

(Assignments of Error Nos. 5 & 6)
In these assignments, we are asked to review evidentiary rulings of the trial court. In his fifth assignment of error, defendant contends that the trial court erred in allowing the jury to learn that defendant was convicted of DWI in criminal proceedings arising from this accident, and in allowing plaintiff to introduce a certified copy of the minute entry of defendant's conviction for DWI, vehicular negligent injuring and driving left of center as documentary evidence.
In reaching a decision on these alleged procedural errors, this Court must consider whether the particular ruling complained of was erroneous and whether the error prejudiced the defendant's cause, for unless it does, reversal is not warranted. LSA-C.E. art. 103; Wallace v. Upjohn Company, 535 So.2d 1110, 1118 (La.App. 1st Cir.1988), writ denied, 539 So.2d 630 (La.1989). Moreover, the party alleging error has the burden of showing the error was prejudicial to its case. The determination is whether the error, when compared to the record in its totality, has a substantial effect on the outcome of the case. Wallace, 535 So.2d at 1118. Absent a prejudicial error of law, this Court is not required to review the appellate record de novo. See Rosell v. ESCO, 549 So.2d 840, 844 n. 2 (La.1989).
After carefully reviewing the entire record herein, we conclude that defendant has failed to present to this Court how the alleged error, if any, by the trial court arising from the admission of the above evidence, had any substantial bearing or effect on the outcome of the case. Considering defendant's own admission that he had consumed alcoholic beverages before the accident, and in view of the testimony of the investigating officer and the toxicology expert, we find that the error, if any, by the trial court, had no substantial relationship to the jury's determination that plaintiff was entitled to exemplary damages in this case.
This assignment of error also lacks merit.
*912 In his sixth assignment of error, defendant asserts that the trial court erred in allowing plaintiff to introduce testimony by family members concerning plaintiff's physical condition at the hospital and his restrictions following the accident. Defendant argues that the testimony was cumulative, self-serving and highly prejudicial to defendant.
The admission of cumulative evidence is largely within the discretion of the trial court. Gormley v. Grand Lodge of State of Louisiana, 503 So.2d 181, 184 (La. App. 4th Cir.), writ denied, 506 So.2d 1227 (La.1987). In this case, the trial court allowed testimony of Dicie Bickham and Pecolia Nichols, two of plaintiff's first cousins, relative to plaintiff's activities before and after the accident. Bickham, Esther Brumfield, plaintiff's mother, and Catherine Brumfield, plaintiff's sister, also testified as to plaintiff's condition immediately following the accident and while in the hospital. Esther related how the accident affected plaintiff's quality of life for the two years following the accident.
We have carefully reviewed this testimony and are unable to conclude that the trial court erred in allowing plaintiff to present the testimony of his family members. Considering the record herein, we find no abuse of discretion.
This assignment of error is also without merit.

REDUCTION OF EXEMPLARY DAMAGES BY THE CO-DEFENDANT'S FAULT

(Assignment of Error No. 7)
The final issue presented in this appeal is whether the trial court erred in not reducing plaintiff's exemplary damage award by 10%, representing the percentage of fault apportioned by the jury to Webb.
Louisiana Civil Code article 2315.4, which authorizes an additional award for exemplary damages under certain circumstances, has a dual purpose, to penalize (and therefore deter) drunk drivers, and to provide damages for the victim of such drivers. Sharp v. Daigre, 545 So.2d 1063, 1064-1065 (La.App. 1st Cir.1989), affirmed, 555 So.2d 1361 (La.1990).
For Webb to be liable to plaintiff for exemplary damages, his conduct must have fallen within the requirements of the statute. Likewise, for Webb to be liable for any part of the $150,000.00 exemplary damage award, there must be a causal relationship between his conduct and the damages sustained by plaintiff. While the jury could have properly concluded that there was a causal relationship between Webb's conduct and the compensatory damages sustained by plaintiff, it is clear that there is no such relationship between Webb's conduct and the amount awarded for exemplary damages. Quite simply, plaintiff was entitled to and was awarded exemplary damages solely due to the conduct of Guilmino. We can find no basis for reducing this award by the 10% fault attributed to Webb. This conclusion is in accord with the purpose of the statute authorizing the exemplary damage award. Accordingly, we find no error in the trial court's refusal to reduce plaintiff's exemplary damage award by 10%.
This assignment of error also is without merit.

CORRECTION OF THE LOWER COURT'S JUDGMENT
In our careful and considered review of this case, we have discerned that the jury verdict form contains an error in calculation of the total awarded as general and special damages. While the verdict form and, indeed, the judgment reflects a total of $446,000.00 as the sum of compensatory damages awarded, this figure should actually be $546,000.00.
This $100,000.00 difference is obviously a clerical error or error in calculation by the jury. As a reviewing court, we are vested with the authority to correct obvious errors of calculation in judgments of the trial court, which could have been corrected if brought to the attention of the court below. LSA-C.C.P. art. 1951; see Union Sulphur Co. v. Campbell, 207 La. 514, 21 So.2d 626, 632 (1945). Accordingly, we will amend the judgment to make the corrections.

*913 CONCLUSION
For the above and foregoing reasons, the November 2, 1992, judgment of the trial court is amended to increase plaintiff's award for general damages and special damages from $446,000.00 to $546,000.00. Additionally, the judgment is amended to correct the reduction of compensatory damages, for the comparative fault of James B. Webb, from $44,600.00 to the correct figure of $54,600.00.
In all other respects, the November 2, 1992, judgment of the trial court, in favor of plaintiff, Silvester E. Brumfield, and against defendant, Alcee M. Guilmino, is hereby affirmed. All costs of this appeal are assessed to defendant/appellant, Alcee M. Guilmino.
AMENDED IN PART, AND AS AMENDED, AFFIRMED.
NOTES
[1] In the early stages of these proceedings, State Farm invoked a concursus proceeding and deposited into the court's registry $110,000.00, representing the total policy limits of policies issued to Carnesi and Webb. Subsequently, State Farm deposited the additional sums of $9,900.00, and $2,880.12 into the court's registry. Plaintiff withdrew these funds. Thereafter, State Farm filed motions for summary judgment, contending that it had no remaining liability to Brumfield. The second motion filed by State Farm was granted.
[2] LSA-C.C. art. 2315.4 provides as follows:

In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.
[3] A litigant in a civil proceeding cannot avail himself of the statutory presumption of intoxication that is allowed in a criminal proceeding. However, while test results are not conclusive evidence, the evidence does have probative value in proving entitlement to exemplary damages. McDaniel v. DeJean, 556 So.2d 1336, 1339 (La. App. 3rd Cir.1990).