676 So.2d 1166 (1996)
Rosa HURTS
v.
James WOODIS, Truax Truck Lines, Inc., and National Fire and Marine Insurance Company.
No. CA 95 2166.
Court of Appeal of Louisiana, First Circuit.
June 28, 1996.
*1170 Gail N. McKay, Baton Rouge, for plaintiff/appellee.
Nancy J. Marshall, New Orleans, for defendants/appellants.
Before LeBLANC, WHIPPLE and FOGG, JJ.
WHIPPLE, Judge.
This case is before us on appeal from a judgment in favor of plaintiff, Rosa Hurts, and against defendants, James Woodis[1], Truax Truck Lines, Inc., and National Fire and Marine Insurance Company. From this judgment, defendants appeal. We reverse in part, amend in part, and as amended, affirm in part.

FACTS AND PROCEDURAL HISTORY
This lawsuit arises out of an automobile accident which occurred on January 15, 1992, on North Lobdell in Baton Rouge, Louisiana. North Lobdell runs north to south, with two southbound lanes and two northbound lanes for travel.
The parties offered conflicting versions of how the accident occurred. Plaintiff was proceeding in a southerly direction on North Lobdell, travelling in the right hand lane. According to plaintiff, she was traveling slightly behind Woodis, who was operating an 18-wheeler freightliner and also traveling southbound but in the left hand lane. Plaintiff stated that the accident occurred when Woodis drove his vehicle from the left lane of travel into the right lane. Plaintiff testified *1171 that Woodis' vehicle first hit the left side of her vehicle while he was attempting to make a left turn from the outermost lane. She then ran into the rear of the Woodis vehicle.
According to Woodis, he was making a delivery to King Wholesale, located on the opposite side of North Lobdell which required a U-turn maneuver. In order to accomplish the turn, he positioned his vehicle in the outermost right hand lane. Woodis stated that he had come to a complete stop, partially in the right hand lane and partially off of the roadway and was preparing to make a U-turn to the left, with his flashers activated. He stated that he observed plaintiff, who appeared to be applying lipstick, approaching from the rear. Woodis testified that plaintiff apparently did not see his stopped vehicle and collided into the rear, striking the left rear tires of the rig.
On December 21, 1992, plaintiff filed suit against defendants seeking damages as a result of the automobile accident. The matter proceeded to trial by jury which was held over a four day period. Following trial, the jury returned a verdict in favor of plaintiff and against defendants, finding both drivers at fault and apportioning 80% fault to Woodis and 20% fault to plaintiff. Damages were awarded in the following amounts: $10,000.00 for physical injuries sustained; $20,000.00 for past and future physical pain and suffering; $6,500.00 for past and future mental anguish and grief; $5,000.00 for loss of earning capacity; and $20,000.00 for past and future medical and other expenses.
A judgment was signed in accordance with the jury's verdict, in favor of plaintiff, in the amount of $49,200.00. From this judgment, defendants appeal, setting forth their assignments of error as follows:
1. The Court committed errors and engaged in conduct that substantially prejudiced the defendants and interfered with their ability to properly defend the case such as to warrant a de novo review of the evidence, and alternatively, that the decision of the jury was manifestly erroneous and not supported by the record.
a. The Court erred when it overruled defense's Batson objections.
b. The Court erred in its charging of the jury.
c. Above and beyond the improperly included jury instructions, the Court committed other errors and engaged in conduct that substantially prejudiced the defendants and interfered with their ability to properly defend the case to the extend that the jury was not allowed to hear all the evidence which resulted in an improper jury verdict.
2. The jury erred when it found that defendant, James Woodis was 80% at fault and plaintiff was 20% at fault.
3. The jury erred when it awarded $5,000.00 for loss earning capacity as there was no evidence relating to plaintiff's diminished ability to earn.
4. The jury erred when it awarded damages for future medicals as the plaintiff failed to prove that it was more probable than not that she would need future care.
5. The jury was manifestly erroneous in its award of $10,000.00 for physical injuries sustained; $20,000.00 for physical pain and suffering past and future; $6,500.00 for mental anguish and grief past and future as plaintiff failed to prove that it was more probable than not that the accident caused the injuries at issue.

BATSON CHALLENGE

(Assignment of Error Number 1a)
On appeal, defendants contend that the trial court erred in overruling their objection to the plaintiff's racially motivated use of challenges to strike all white males from the jury, citing Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Plaintiff, on the other hand, avers that this issue is not properly before us, citing Holmes v. Great Atlantic and Pacific Tea Company, 622 So.2d 748, 760 (La.App. 4th Cir.), writ denied, 629 So.2d 1178 (La.1993). In Holmes, the fourth circuit took the following position with regard to Batson challenges:
The reputed error committed is the result of an interlocutory ruling, not a final judgment. Accordingly the proper remedy in a civil trial is a writ, not an appeal after the *1172 judgment is final. Indeed, it is only common sense that if a writ is taken on a civil voir dire Batson challenge, then this court can review and determine at the time if an error has been made. To proceed to trial when there may be an error which can nullify the entire proceeding not only gives one party two bites at the apple, but also is a tremendous waste of judicial time and resources. Judicial economy, procedural due process, and equal protection all mandate that Batson challenges to civil trials must be reviewed on writ. We note that via emergency writ procedures and appellate court stay orders, a Batson challenge handled by writ need not cause the loss of a trial date.

Holmes, 622 So.2d at 760.
However, we first note that the above quoted language is dicta, in that the fourth circuit addressed the merits of the trial court's ruling on the Batson challenge. Moreover, we are not persuaded that a writ is the only acceptable method to seek review of a Batson ruling. We find no meaningful distinction between review of the trial court's ruling on jury challenges when based on a Batson claim and appellate review of the trial court's ruling when based on a party's challenge to a juror for cause, which are routinely reviewed on appeal. See In re Medical Review Panel, 94-1661, pp. 6-10 (La.App. 1st Cir. 6/23/95); 657 So.2d 713, 718-720. Additionally, we note that this court has previously reviewed a Batson ruling even where, as here, the issue was raised for the first time on appeal, rather than by way of a writ application. See Richard v. St. Paul Fire and Marine Insurance Company, 94-2112, p. 3 (La.App. 1st Cir. 6/23/95); 657 So.2d 1087, 1089.
Thus, to the extent that the fourth circuit in Holmes articulates that the only acceptable method of seeking review of a ruling on a Batson challenge is by application for writs, we decline to follow our colleagues on the fourth circuit on this issue and conclude that this issue is properly before us on appeal.
A private litigant in a civil case may not use peremptory challenges to exclude jurors on the account of race. To do so is a violation of the Equal Protection Clause. Richard, 94-2112, at p. 4; 657 So.2d at 1090 (citing Edmonson v. Leesville Concrete Company, Inc., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991)). First, the challenging party must make a prima facie showing that the opposing party exercised a peremptory challenge on the basis of race. The burden then shifts to the opposing party to articulate a race-neutral explanation for striking the jurors in question which is related to the case to be tried. Batson, 476 U.S. at 96-98, 106 S.Ct. at 1723-1724. This second step of the process does not demand an explanation that is persuasive, or even plausible. Purkett v. Elem, ___ U.S. ___, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995).
In the final step of the analysis, the trial court must determine whether the party raising the Batson challenge has carried his burden of proving purposeful discrimination. At this stage, the trial court must consider the persuasiveness of the explanations. It is at this stage that implausible or fantastic justifications may be found to be pretexts for purposeful discrimination. Purkett, ___ U.S. at ___, 115 S.Ct. at 1771.
The record reflects that counsel for defendants objected after plaintiff's counsel had exercised all six peremptory challenges to exclude white males. The trial court, apparently finding that a prima facie case of exclusion by reason of race had been established, then directed plaintiff's counsel to state for the record the race-neutral reasons for peremptorily challenging these six prospective jurors. Plaintiff's counsel responded with the following explanations:
(1) Prospective juror Wood: Mr. Wood had a previous back condition, and one of his good friends was the owner of a trucking company.
(2) Prospective juror Bartels: Mr. Bartels was an architect and would, thus, possibly focus on designs and dimensions, drawing the jury away from the facts presented.
(3) Prospective juror Boudreau: Mr. Boudreau was an insurance salesman, and he would have a problem with rendering a substantial verdict.
*1173 (4) Prospective juror Stogner: Mr. Stogner was an inspector, who performed some truck inspections for insurance companies.
(5) Prospective juror Lobell: Mr. Lobell demonstrated a problem with an award for aggravation of a pre-existing condition.
(6) Prospective juror Vonbodungen: Mr. Vonbodungen indicated that he had been a defendant in a lawsuit and was unhappy about having been sued.
After hearing the explanations by plaintiff's counsel, the trial court found that the explanations were satisfactory and that a "sufficient basis of neutrality" existed for the peremptory challenges. Thus, defendants' Batson objection was denied.
We find no error in the ruling by the trial court. The reasons offered by plaintiff's counsel were valid and related to the case. We have thoroughly reviewed the transcript of the selection process, and we find no indication that the reasons offered by plaintiff's counsel were pretextual, implausible, unreasonable or unrelated to the case. See Richard, 94-2112, at p. 6; 657 So.2d at 1091. The trial court did not err in denying defendants' Batson objection, because defendants did not carry the ultimate burden of proving purposeful discrimination. This assignment of error lacks merit.

ERRONEOUS JURY INSTRUCTIONS

(Assignment of Error Number 1b)
On appeal, defendants challenge two jury instructions given by the trial judge. First, defendants argue that the trial judge erroneously charged the jury that professional truck drivers have a capacity superior to that of ordinary car drivers. Secondly, defendants argue that the trial judge erroneously charged the jury regarding the stopping or parking of a vehicle outside a business or residential district, pursuant to LSA-R.S. 32:141.
In a jury trial, the judge is not required to give the instructions submitted by either party; however, the trial judge is obligated to give instructions which properly reflect the law applicable in light of the pleadings and facts in each case. Adequate instructions are those instructions which fairly and reasonably point out the issues presented by the pleadings and evidence and which provide correct principles of law for the jury's application thereto. Haydel v. Hercules Transport, Inc., 94-1246, p. 17 (La. App. 1st Cir. 4/7/95); 654 So.2d 418, 429, writ denied, 95-1172 (La. 6/23/95); 656 So.2d 1019. An appellate court must exercise great restraint before overturning a jury verdict on a suggestion that the jury instructions were so erroneous as to be prejudicial. Haydel, 94-1246 at 17; 654 So.2d at 429.
In this case, the first alleged error was made as the trial court was instructing the jury regarding principles of comparative fault and apportionment of fault. The trial court stated as follows:
You must, therefore, compare the fault of each party and assign a percentage to each party whose fault contributed to the accident.... In determining the percentages of fault, you should consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including whether the conduct resulted from inadvertence or involved an awareness of the danger, how great a risk was created by that conduct, the significance of what was sought by that conduct, the capacities of the actors, whether superior or inferior, and any extenuating circumstances which might require the actor to proceed in haste and without proper thought. The relationship between the fault and the negligence of the conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties. Professional truck drivers have a capacity superior to that of the ordinary car driver.
The record shows that defendants specifically objected to this charge. In response to the objection, the trial court cited Stapleton v. Great Lakes Chemical Corporation, 627 So.2d 1358, 1362 (La.1993), wherein the Louisiana Supreme Court, in apportioning fault *1174 among various parties, including professional truck drivers, stated:
Examining the parties' [respective] fault under the guidelines in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985): both truck drivers were professional operators and therefore in a superior position vis-à-vis Brown....
After reviewing the jury instructions as a whole, and the jurisprudence cited by the trial court, we conclude that the trial judge properly instructed the jury and gave instructions which fairly and reasonably pointed out the issues presented by the pleadings and evidence and which provided correct principles of law for the jury's application thereto. We find no error in the jury charge given by the trial court. This argument is without merit.
Defendants also contend that the trial court erroneously charged the jury regarding LSA-R.S. 32:141. However, in order for an appellate court to consider whether the trial court properly instructed the jury, the objection must be made on the record by appellant stating specifically the matter to which the objection is made and the grounds for the objection. LSA-C.C.P. art. 1793(C); Menzie Tile Company, Inc. v. Professional Centre, 594 So.2d 410, 415 (La.App. 1st Cir.1991), writ denied, 600 So.2d 610 (La.1992). We have reviewed the record herein and conclude that the defendants failed to preserve the objection for appellate review. Following the jury charges, counsel for defendants did not object to this charge and, at one point, even suggested that a copy of the statute be given to the jury. While we acknowledge that the record contains a pre-trial motion to strike this jury charge, the record shows that the motion was never disposed of prior to trial nor was the motion re-urged by counsel for defendants at trial of this matter. Accordingly, we pretermit discussion of this alleged error.

OTHER ALLEGED ERRORS

(Assignment of Error Number 1c)
Defendants contend that the trial court committed various other errors which, when taken in their totality, constitute an abuse of discretion by the trial court and require that the jury's verdict be overturned. We disagree.
Defendants argue that the trial court erred in refusing to allow counsel to view photographs which plaintiff possessed prior to defense counsel presenting their opening statements. Defendants contend that prior to opening statements, defense counsel noticed that plaintiff's counsel was in possession of certain photographs, taken by plaintiff's brother shortly after the accident, that showed damage to plaintiff's vehicle which defendants claimed differed from the damage depicted in photographs taken by their insurance adjuster.
Defendants claim that plaintiff's counsel "wished to use them in his opening statement" and that defense counsel was prejudiced by the court's refusal to order plaintiff to show the pictures to defense counsel prior to opening statements. The record shows that all of the photographs were ultimately admitted into evidence and that the jury was aware of the parties' opposing versions of how the accident occurred. Considering the record in its entirety, and the previous discovery responses which placed all parties on notice that liability was contested, we find no prejudicial error in the trial court's ordering that opening statements proceed as scheduled and without further delay to allow counsel to examine the photographs.
Defendants also argue in this assignment of error that the trial court made prejudicial comments during the trial, improperly handled the proffer of certain testimony and improperly resolved defense objections during plaintiff's closing argument.
A trial judge has discretion in conducting a trial. The judge is required to do so in an orderly, expeditious manner and to control the proceedings so that justice is done. LSA-C.C.P. art. 1631; Pino v. Gauthier, 633 So.2d 638, 648 (La.App. 1st Cir. 1993), writs denied, 94-0243 (La. 3/18/94); 634 So.2d 858 and 94-0260 (La. 3/18/94); 634 So.2d 859.
We have reviewed the appellate record in its entirety and cannot conclude that *1175 there was an abuse of discretion by the trial court in its method of conducting the trial. As noted by the trial judge and as clearly reflected by the appellate record, there was much animosity between counsel for plaintiff and defendants. In light of this animosity, the trial court was repeatedly required to intervene in their disputes. While we agree that some of the comments made by the trial judge may have been improvident, we cannot conclude, in light of the circumstances, that any alleged error by the trial court in conducting the proceedings was so prejudicial as to warrant a reversal of the jury's verdict. Moreover, we find no merit to defendants' contention that the comments made by the trial court constituted a prohibited comment by the court on the evidence or the character of the witnesses as claimed by defendants in their brief on appeal. These arguments also lack merit.
Defendants also contend that the trial court erred in refusing to allow the defense to cross-examine plaintiff regarding an alleged relationship between plaintiff and the officer who investigated the accident. According to defendants, Officer Pointer is plaintiff's step-brother. However, at trial plaintiff and Pointer denied that they were related. Defendants contend they had evidence in their possession which would have impeached plaintiff's claim that she and Pointer were not related. However, when defense counsel attempted to impeach plaintiff's testimony, the trial court ruled that the evidence was inadmissible. Defendants argue on appeal that the exclusion of this evidence was erroneous.
Our review of the record shows that defendants did not proffer the excluded testimony. It is well settled that error may not be predicated upon a ruling which excludes evidence unless a substantial right of a party is affected and the substance of the evidence was made known to the court by counsel. LSA-C.E. art. 103A(2); Menzie Tile, 594 So.2d at 415. It is incumbent upon the party who contends his evidence was improperly excluded to make a proffer, and if he fails to do so, he cannot contend such exclusion was erroneous. Williams v. Exxon Corporation, 541 So.2d 910, 912-913 (La.App. 1st Cir.), writ denied, 542 So.2d 1379 (La. 1989). Because defendants failed to proffer this evidence, they cannot now complain that such exclusion was error.
Finally, defendants contend that the trial court erroneously allowed Mr. Earl Flowers, an eye-witness to the accident, to give opinion testimony on the issue of whether it was dangerous for Woodis to have stopped his vehicle on North Lodbell. LSA-C.E. art. 701 allows a lay witness to give testimony in the form of opinions or inferences if those opinions are rationally based on the perception of the witness, and helpful to a clear understanding of the witness' testimony or the determination of a fact in issue. Flowers was employed by King Wholesale, the business establishment where Woodis was scheduled to make his delivery. According to Flowers, he had been employed by King Wholesale for one and one-half years and had never seen an 18-wheeler park his vehicle in the manner which Woodis had done. He stated that in his opinion, Woodis had stopped his vehicle in an unsafe area. We find that the limited opinion testimony given by this lay witness was rationally based on his perception of the accident scene and the events he personally observed. Accordingly, the testimony was properly admitted. LSA-C.E. art. 701; Whetstone v. Dixon, 616 So.2d 764, 769 (La.App. 1st Cir.), writs denied, 623 So.2d 1333 (La.1993). These arguments by defendants are without merit.

APPORTIONMENT OF FAULT

(Assignment of Error Number 2)
Defendants contend on appeal that the jury was manifestly erroneous in allocating fault among the parties. According to defendants, plaintiff should have been assigned a greater degree of fault because the weight of the evidence shows that plaintiff struck the rear of Woodis' stopped vehicle, as opposed to plaintiff's contention at trial that she struck Woodis' vehicle as he changed lanes.
It is well settled in our jurisprudence that factual findings will not be set aside in the absence of manifest error or unless the findings of fact are clearly wrong. Stobart v. State Department of Transportation *1176 and Development, 617 So.2d 880, 882 (La.1993). After reviewing the appellate record in its entirety, we cannot conclude that the jury was manifestly erroneous in its weighing of the evidence and/or its evaluation of the credibility of the various witnesses. Accordingly, we find no manifest error in the jury's factual findings of liability and apportionment of fault. Contrary to defendants' claim, we find ample support in the record for the jury's acceptance of plaintiff's version of how the accident occurred. As a reviewing court, we are mindful of the deference afforded the trier of fact's finding and recognize that the trier of fact's allocation of fault is subject to the manifest error standard of appellate review. Stockstill v. C.F. Industries, Inc., 94-2072, p. 18 (La.App. 1st Cir. 12/15/95); 665 So.2d 802, 816. Based on the record herein, we cannot conclude that the jury was manifestly erroneous in its allocation of 80% fault to Woodis and 20% fault to plaintiff.

DAMAGES

(Assignments of Error Numbers 3, 4 & 5)

General Damages
Defendants contend on appeal that the jury's award of general damages, totalling $36,500.00, was an abuse of discretion. Defendants argue that the general damage award is abusively high because plaintiff failed to prove that the accident caused the injuries to plaintiff's knee and back. We disagree. The parties do not dispute that plaintiff had pre-existing medical problems for which she had received extensive treatment prior to the accident, including a knee injury for which she had undergone previous surgery. However, defendants claim plaintiff failed to establish that the injuries complained of at trial were causally related to the accident at issue herein.
A tort-feasor is only liable for damages caused by his negligent act; he is not liable for damages caused by separate, independent or intervening causes of damages. However, a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. When a defendant's conduct aggravates a pre-existing condition, the defendant must compensate the victim for the full extent of the aggravation. Before recovery can be granted for an aggravation of a pre-existing condition, a causative link between the accident and the victim's current status must be established. This causation is a question of fact, entitled to great weight, and the determination cannot be disturbed on appeal absent manifest error. Brumfield v. Guilmino, 93-0366, p. 8 (La.App. 1st Cir. 3/11/94); 633 So.2d 903, 909, writ denied, 94-0806 (La. 5/6/94); 637 So.2d 1056.
Further, in reviewing a general damage award, the role of an appellate court is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration. Brumfield, 93-0366 at 4; 633 So.2d at 907. The initial inquiry is whether the award for the particular injuries and their effects upon the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Only after a determination that an abuse of discretion exists is a resort to prior awards appropriate and then for the limited purpose of determining the highest or lowest point which is reasonably within that discretion. The discretion vested in the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. Brumfield, 93-0366 at 4-5; 633 So.2d at 907.
Plaintiff contended at trial and the jury apparently agreed, that the accident in question resulted in an aggravation of a pre-existing knee problem, as well as injury to plaintiff's back. These findings are amply supported by the record and are not clearly erroneous. Dr. Allen Johnston, an orthopedic surgeon, accepted by the court as an expert, testified at trial. Dr. Johnston noted that on initial evaluation, plaintiff complained of knee and back pain. Upon examination, Dr. Johnston found a contusion or bruising to the medial joint of the knee, questionable fluid on the knee joint and grinding beneath *1177 the knee cap. He further noted tenderness in the lumbosacral region. An MRI of the knee was performed which revealed torn cartilage, and surgery was recommended and performed. Dr. Johnston explained that during surgery, he discovered that there was not torn cartilage, but that the scar tissue from plaintiff's previous knee surgery was inflamed. He opined that the inflammation was caused by the accident at issue.
Plaintiff also underwent an MRI of her back at the direction of Dr. Johnston. The MRI showed a probable herniation at the L5-S1 level of the spine, which Dr. Johnston opined was also a result of the automobile accident. Dr. Johnston stated that plaintiff was not a surgical candidate and recommended continued conservative care. He assigned an 8-10% permanent impairment due to the disc herniation. Dr. Johnston noted that in his review of plaintiff's prior medical history, he found no recorded complaints of back pain prior to the accident. Thus, he opined that the herniation was caused by the automobile accident.
Plaintiff testified that prior to the accident, she experienced some soreness and tenderness in her left knee, but that after the accident, the pain was sharp and she felt numbness and tingling sensations. She testified that her knee condition improved after the surgery, but that she continues to experience back pain. Plaintiff stated that she never experienced back pain prior to the accident. Plaintiff testified that she experienced, and continues to experience, tremendous physical and emotional pain due to the accident and resulting injuries.
Based on the above and foregoing testimony, we cannot conclude that the jury was manifestly erroneous in concluding that the accident aggravated plaintiff's pre-existing knee injury, causing plaintiff pain and ultimately requiring additional knee surgery. Moreover, the record amply supports the jury's finding that the accident caused the injury to plaintiff's back. Considering the great, even vast, discretion afforded the trier of fact in awarding general damages, we cannot conclude that the general damage award, totaling $36,500.00, was an abuse of discretion.[2]

Medical Expenses
Defendants contend on appeal that the jury abused its discretion in awarding future medical expenses. We agree.
In order to recover future medical expenses, the appellate record must establish that future medical expenses will be necessary and inevitable. Brumfield, 93-0366 at 7; 633 So.2d at 908. An award for future medical expenses will not be supported in the absence of medical testimony that they are indicated and setting out their probable costs. When the record establishes that future medical expenses will be necessary and inevitable, courts should not reject the award on the basis that the record does not provide the exact value of necessary expenses, if the court can examine the record and determine from the evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree would be required. Brumfield, 93-0366 at 7; 633 So.2d at 908.
On appeal, defendants note plaintiff's past medical expenses amount to $10,086.38, representing expenses for the treatment of her knee injury and back injury. However, the jury awarded $20,000.00 for past and future medical and other expenses. Defendants argue that there is no evidence in the record to support any award for future medical expenses and claim that any award for medical expenses should be limited to $10,086.38. We agree.
We have carefully reviewed the appellate record herein and find no basis in the record to support the jury's award for future medical expenses. According to Dr. Johnston, plaintiff is not a surgical candidate. Instead, plaintiff's back condition will require conservative *1178 care, including weight loss, activity modification and strengthening of the abdominal and lower back muscles. Dr. Johnston testified that when a patient sustains a herniation to a disc there is always a possibility of future impingement or pressure on a nerve root which might require surgery. However, Dr. Johnston did not opine that surgery was inevitable or even probable in plaintiff's case. Moreover, neither Dr. Johnson nor any other witness testified regarding the probable costs of back surgery, if needed. Indeed, there is no evidence in the record setting forth the costs of any future conservative care plaintiff might require.
Based on the above and foregoing, we agree with defendants that the jury abused its discretion in awarding $20,000.00 for past and future medical expenses in view of the record herein. Accordingly, the award is reduced to $10,086.38, representing the stipulated amount of plaintiff's past medical treatment.
This assignment of error has merit.

Loss of Earning Capacity
Defendants contend that the jury erred in assessing damages. Defendants first argue that the jury abused its discretion in awarding $5,000.00 for loss of earning capacity. We agree.
The jury is afforded much discretion in awarding damages. Sinor v. National Casualty Company, 633 So.2d 720, 722 (La.App. 1st Cir.1993). However, the plaintiff must prove by a preponderance of the evidence both the negligence of defendant and the damages caused by defendant's fault. Sinor, 633 So.2d at 721. In reviewing a damage award, the question to be resolved by the appellate court is whether the jury's award of a particular sum is reasonably supported by the record. In this case, we find that the jury abused its much discretion in awarding damages for loss of earning capacity. While the record contains testimony regarding plaintiff's employment at the time of the accident, there is no evidence in the record to establish whether her ability to earn that amount has been reduced. Plaintiff did not offer lay or expert testimony establishing the extent, if any, of her loss of earning capacity due to the accident. The record does not establish how or to what extent plaintiff's injuries have impaired her ability to earn wages. Thus, in the absence of any support in the record for an award for loss of earning capacity, we must conclude the jury abused its discretion in making this award. Thus, insofar as the judgment awards plaintiff $5,000.00 for loss of earning capacity, the judgment is reversed.
This assignment of error has merit.

CONCLUSION
For the above and foregoing reasons, the judgment of March 20, 1995, in favor of plaintiff, Rosa Hurts, and against defendants, James Woodis, Truax Truck Lines, Inc., and National Fire and Marine Insurance Company, is reversed insofar as the judgment awards $5,000.00 for loss of earning capacity. The judgment is amended to reduce the award for past and future medical expenses from $20,000.00 to $10,086.38. In all other respects the judgment is affirmed. Costs of this appeal are assessed against defendants.
REVERSED IN PART; AMENDED IN PART; AND AS AMENDED, AFFIRMED.
NOTES
[1] Plaintiff's petition erroneously refers to defendant as "James Woods" instead of "James Woodis."
[2] In brief, plaintiff argues that the jury's award of general damages should be substantially increased because her injuries warrant a higher amount than awarded. However, when a party has not appealed or answered the appeal, we cannot amend the judgment in its favor. LSA-C.C.P. art. 2133; Britt Builders, Inc. v. Brister, 618 So.2d 899, 901 (La.App. 1st Cir.1993); Kibbe v. Lege, 604 So.2d 1366, 1373 (La.App. 3rd Cir.), writs denied, 606 So.2d 540, 541 (La.1992).