392 So.2d 713 (1980)
Wanda KEEL, Both Individually and as Natural Tutrix for Kenneth E. Naquin and Kenneth E. Naquin, Sr., Plaintiffs-Appellants,
v.
Ima THOMPSON and Government Employees Insurance Company, Defendants-Appellees.
No. 7858.
Court of Appeal of Louisiana, Third Circuit.
December 17, 1980.
*714 Baggett, McCall, Singleton, Ranier & Ieyoub, Drew Ranier, Lake Charles, for plaintiffs-appellants.
Raggio, Cappel, Chozen & Berniard, Christopher Trahan, Lake Charles, for defendants-appellees.
Before GUIDRY, STOKER AND DOUCET, JJ.
GUIDRY, Judge.
In this tort action Wanda Keel, Individually and as Natural Tutrix of Kenneth Naquin Jr., age nine, and Kenneth E. Naquin Sr., seek to recover damages sustained by their minor son who was involved in a bicycle-automobile collision. Ima Thompson, driver of the automobile and her insurer, Government Employees Insurance Company are named as defendants. The trial court rendered judgment for the defendants. Plaintiffs have appealed urging that the trial court manifestly erred in its conclusion that the defendant driver, Ima Thompson, was free of any negligence. Appellants further urge that the trial court erred in its conclusion that the minor bicyclist was guilty of contributory negligence.
The trial judge rendered written reasons setting forth in detail his factual findings and his conclusions in regard thereto. Close scrutiny of the trial record reveals not only that the trial judge's conclusions are free of manifest error but rather fully supported by the evidence adduced. For this reason we take the liberty of adopting as our own the well considered opinion of the trial court which reads in its entirety as follows:
"This case involves an automobile-bicycle accident that occurred at approximately 7:55 p. m. on Sunday, August 14, 1977, at the intersection of N. Texas Street and Simmons Street in DeRidder, Louisiana. The bicycle rider, Kenneth Naquin, Jr., who was nine years old at that time, was injured and his mother and natural tutrix has brought this suit for damages against the owner and operator of the automobile, Mrs. Ima Thompson, and her liability insurer, Government Employees Insurance Company.
N. Texas Street runs north and south and is intersected from the east by Simmons Street, which runs east and west but which does not cross N. Texas. Thus, a T-intersection is formed at that point. Both streets are hard-surfaced, but N. Texas has the right of way. There is a stop sign at the intersection on Simmons Street for traffic entering N. Texas from Simmons. The speed limit on N. Texas Street was and is 35 miles per hour.
Just prior to the accident, the defendant driver, Mrs. Thompson, was travelling north on N. Texas Street in her 1976 Buick Skylark, which was in good condition. She had just left Texas Avenue Baptist Church, where she had attended evening services. That church is approximately three or four blocks south of where the accident happened. She was headed home, following her usual route from church, and she was travelling about 20 miles per hour as she approached Simmons Street. The weather was clear and dry. It was not dark, but because of the time of day, Mrs. Thompson was driving with her lights on.
*715 On the west side of N. Texas Street, almost directly across from Simmons Street, there is a parking lot for the Assembly of God Church. As Mrs. Thompson was traveling in the northbound lane of N. Texas Street, she momentarily looked to the northwest, toward that parking lot, to determine if any vehicles on the lot were moving toward the street. As she neared the intersection, Kenneth suddenly entered N. Texas Street from Simmons Street riding a ten-speed bicycle. Immediately upon seeing the boy on the bicycle, Mrs. Thompson hit her brakes and swerved to her left in an attempt to miss him. She was nearly stopped when the bicycle collided with the right front bumper of her vehicle.
The left tires of Mrs. Thompson's automobile left 32 to 34 feet of skid marks. The car stopped just north of the intersection, with its left front tire slightly over the center line of N. Texas Street. The bicycle came to rest on the east curb of N. Texas Street near the front of the automobile.
The officer who investigated the accident was of the opinion that the point of impact was in the northeast quadrant of the intersection and off to the right. However, there was nothing on the street to mark that spot, so he simply estimated where he thought the collision occurred.
Plaintiff contends that Mrs. Thompson failed to maintain a proper lookout as she approached Simmons Street; that she was looking off toward the parking lot and failed to timely see that which she should have seen, that is, Kenneth entering N. Texas Street on his bicycle. Plaintiff argues that if Mrs. Thompson had maintained a proper lookout, she could and would have seen Kenneth in sufficient time to react and avoid an accident.
On the other hand, Mrs. Thompson maintains that obstructions at the intersection prevented her from seeing Kenneth until about the time he reached the intersection; that he was moving fast and, despite her best efforts to do so, she was unable to avoid the accident.
Kenneth has no explanation for the accident because he does not remember colliding with an automobile. He said he left his father's home on Patton Street, which is west of N. Texas and several blocks south of where the accident happened, and rode his bicycle to N. Texas Street where he stopped and then crossed to the east side of that street. He stated he then rode north on a sidewalk along the east side of N. Texas.
Kenneth said he believes he was involved in an accident because the brakes went out and he lost control of his bicycle. However, as stated above, he has no recollection of colliding with or being hit by an automobile.
Kenneth testified that two other boys were riding bicycles with him prior to the accident, but, inspite (sic) of the fact that he knew one of them, Cecil Thompson, he has not seen or heard from either of the boys since that time and does not know where they are now.
Mrs. Thompson said that she did not see Kenneth or any other children on bicycles on the sidewalk on the east side of N. Texas Street before the accident. She testified that when she saw the boy, he was entering N. Texas from Simmons Street.
The Court believes that immediately prior to the accident, Kenneth was riding his bicycle west on Simmons Street and that he failed to stop before entering N. Texas Street. The Court does not believe that he was riding on the sidewalk immediately prior to the accident. Neither does the Court believe that he was accompanied by friends when he collided with the automobile. He may have been riding with friends on the sidewalk earlier that day but not at the time of the accident. His memory was affected by the accident and the Court believes he is confused about when that occurred. It seems highly improbable that two friends, old enough to ride bicycles, would have hastily left the scene of the accident, knowing that Kenneth was injured, without saying anything to anyone and without ever contacting Kenneth or other members of his family again.
*716 There are obstructions in the southeast corner of the intersection which interfere with the vision of persons traveling north on N. Texas and west on Simmons. One problem is that the lot, near the corner, is about four feet higher than the surface of the intersecting streets. To make matters worse, there is considerable downward slope in Simmons Street as it approaches N. Texas. Further, along the north side of the lot, parallel with Simmons Street, there are shrubs, plants, trees and a utility pole which obscure vision. Then there are some shrubs, plants and trees on the west and south sides of the corner lot which add to the problem. See photographs 3, 6, 7, 8, 17a and b, and 18.
There is no doubt that a motorist going north on N. Texas would have great difficulty seeing a small boy riding a bicycle going west on Simmons Street until the bicycle emerged from behind the large evergreen bush located at the corner of the lot. Lower portions of that evergreen bush extend almost to the eastern edge of the sidewalk and upper portions extend over the sidewalk. The distance from the eastern edge of the sidewalk to the street curb probably is not more than 10 or 11 feet. The large utility pole is between the curb and the sidewalk. Thus, it is apparent that the opportunity for a motorist to see and react to a moving bicycle before it actually reaches N. Texas Street is extremely limited.
The evidence establishes, and plaintiff does not contend otherwise, that Mrs. Thompson was proceeding at a safe speed, considerably below the speed limit, and that she was in full control of her automobile. Plaintiff does contend, however, that Mrs. Thompson was distracted and was not maintaining a proper lookout as she drove along the street. The Court does not agree with that contention. The Court finds from the evidence that Mrs. Thompson was maintaining a careful and proper lookout compatible with the circumstances then and there existing. Because she was proceeding along at a time when she knew churchgoers might be leaving services at the Assembly of God Church on the west side of N. Texas Street, Mrs. Thompson was properly concerned about the possibility of vehicles leaving the church parking lot and pulling into the street in front of her automobile. It was prudent for her to be concerned and attentive. On the other hand, at that particular time, there was absolutely no reason for her to anticipate that a child on a bicycle on Simmons Street would suddenly run in front of her car. Before Kenneth appeared at the intersection there was nothing to indicate that children were playing or riding bicycles in that area.
For Mrs. Thompson to check for vehicles on the church parking lot, it was not necessary for her to turn her head to the left to such extent that she could not see the intersection. All that she had to do was move her eyes from straight ahead to slightly to the left. She admitted that she glanced toward the parking lot but she added that she did not turn her head away from the street. The Court believes that is what happened.
In spite of the opinion of plaintiff's expert, Dr. McPhate, to the contrary, the Court concludes that Mrs. Thompson was not able to see Kenneth in time to avoid the accident. Although she was keeping a proper lookout, as indicated above, her view of the intersection was obstructed and when Kenneth became visible, he was rapidly moving into her path and she simply did not have sufficient time to stop her automobile or take other evasive actions to prevent a collision.
Dr. McPhate's opinion that Mrs. Thompson could have seen Kenneth a full second before she saw him and could have prevented the accident if she had applied her brakes one-half second sooner than she did is mechanistic and mathematical and based on numerous assumptions, some of which are not supported by any evidence. One such important assumption is the speed of the bicycle. There is no evidence in the record to support the assumption made by Dr. McPhate. He simply used a speed which he felt would be reasonable. Everything considered, Dr. McPhate relied on too *717 many unsupported assumptions for his mathematically based opinion to be very persuasive. If all of his assumptions are correct, then the ideal driver may have been able to avoid the accident, but it is very doubtful that the average driver, exercising ordinary care, could have done so. Under the facts and circumstances of this case, the Court believes it would be requiring too much of a motorist to hold that Mrs. Thompson failed to maintain a proper lookout and that she should have seen Kenneth in time to have avoided the accident.
While the law imposes a high degree of care upon a motorist operating a vehicle on streets and highways in the vicinity of small children, a driver is not the insurer of the safety of children playing near or along a street or highway. If a motorist is proceeding at a lawful and reasonable rate of speed, maintaining a proper lookout, and otherwise obeying the rules of the road, he will not be held liable for injuries to a child who suddenly darts or dashes into the path of his vehicle from a concealed position in such a way that an accident cannot be avoided. When a driver has employed all reasonable precautions to avoid an accident and a sudden act of a child creates an emergency rendering it impossible for the motorist to avoid striking the child, the accident is considered unavoidable and the motorist is not liable. See Percle v. Employers-Commercial Union Companies, 292 So.2d 314 (La.App. 1 Cir. 1974), where the facts are similar to those in this case. Also see Bruno v. Daniels, 328 So.2d 739 (La.App. 4 Cir. 1976), where the Court said that the duty to exercise greater than ordinary care to avoid injury to a child arises only upon the motorist becoming aware of the child or under circumstances where he should have been aware of the child. In other words, unless the motorist knows or has reason to know that a child is in the vicinity of the street, his duty is to use ordinary care and caution in the operation of his vehicle. In this case, it is clear that Mrs. Thompson did not know and had no reason to know, until it was too late, that Kenneth was riding a bicycle in the vicinity of N. Texas Street.
Kenneth knew the purpose of a stop sign and he should have seen the sign at the intersection. There was nothing to impede his view of it. In any event, whether he saw the sign or not, he did not stop and he should have done so. It was extremely careless of him to ride his bicycle onto N. Texas Street without stopping, as required by the stop sign and common sense, or even looking for approaching northbound vehicles. His actions, even for a nine year old boy, were a gross disregard for his safety in the face of known, perceived and understood danger. Thus, even if Mrs. Thompson was guilty of negligence, Kenneth was guilty of contributory negligence.
This case is unlike Dufrene v. Dixie Auto Ins. Co., 373 So.2d 162 (La.1979). There the court found that a motorist had the last clear chance to avoid a collision with a child on a bicycle who had been observed by the motorist in a position of peril on a highway from a distance of several hundred yards. Here Mrs. Thompson had no last clear chance. By the time she could have first seen Kenneth in a perilous position it was too late for her to avoid the accident.
For the foregoing reasons, the demands of the plaintiff will be rejected at her cost."
We find it unnecessary to address appellants' contention that the trial judge committed error in concluding that the minor bicyclist was guilty of contributory negligence. A careful reading of the trial court's opinion clearly indicates that plaintiffs' suit was dismissed upon a finding that the defendant driver was free from any negligence. We fully agree with this conclusion. Therefore, the question as to whether or not the minor-bicyclist was or was not contributorily negligent is moot.
For the reasons assigned the judgment appealed from is affirmed at appellants' cost.
AFFIRMED.