|!KLEES, Judge.
This appeal stems from a judgment entered on a jury verdict finding no driver negligence in a pedestrian-vehicle collision. The pedestrian, nine year old Richard Bogan, and his grandmother, Elizabeth Bogan, who filed suit individually and on behalf of Richard Bogan, are the plaintiffs/appellants herein. The driver, Mr. James J. O’Connor, Jr. (“O’Connor”), his father, Mr. James J. O’Connor, Sr., and their insurer are the defendants/appellees.
FACTS
On January 15, 1992, sixteen year old James O’Connor, Jr., completed wrestling practice at school at approximately 4:30 p.m., retrieved his car, and picked up his brother, Clayton O’Connor, and a friend, David Rud-dock.[1] While traveling on Banks Street, near the intersection of South Pierce Street, O’Connor noticed “activity” along the sidewalk and began to change to the lane furthest from the sidewalk. After checking his rear view mirror, O’Connor turned back around and saw two boys darting into the street. He applied his brakes and one child, Richard Bogan, a nine year old boy with limited intellectual faculties, continued to run. Clayton O’Connor, seated in the front passenger seat, testified his brother then “slammed on his brakes, threw his hands on the horn, and swerved to the left to try to avoid him.” When asked how hard he swerved, Clayton O’Connor testified, “We, we ran into that neutral ground, so it must have been really hard.” Immediately after the impact, O’Connor jumped out of his car, screamed for someone to call an ambulance and the police, then threw his coat on top of the ^unconscious Richard Bogan. Richard Bogan was the transported to Tulane Medical Center and subsequently to Children’s Hospital.[2]
The only accident witnesses to testify were O’Connor and Clayton O’Connor since Richard Bogan was deemed incapable of testifying. There were no other witnesses to the accident.
Trial began on August 26, 1996 and on August 29, 1996 the jury returned a verdict finding O’Connor not guilty of any negligence that was the proximate cause of Richard Bogan’s injuries. Judgment was the entered on September 23, 1996.[3] The plaintiffs appeal. Plaintiffs appeal, raising the following pertinent assignments of error: 1.) the jury verdict was manifestly erroneous and 2.) the trial court failed to apply the principles of *1384 duty risk analysis to this case and 3.) the trial court precluded jury consideration of comparative fault of all relevant parties and issued confusing jury interrogatories.
MANIFEST ERROR
The general rule is that the trier of fact is in the best posture to decide the issues of a case. The Louisiana Constitution allows for appellate review of both law and facts, however, the jurisprudential rule of practice is that an appellate court will not reverse a factual finding unless it is manifestly erroneous or clearly wrong. La. Const.1974, Art. V Sec. 10(B). Weatherford v. Commercial Union Insurance, 94-1793, 94-1927 (La.2/20/95), 650 So.2d 763. Once the appellate court determines a decision is manifestly erroneous, then the facts will be reviewed de novo. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975). If there is a conflict of testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed. Rosell v. ESCO, 549 So.2d 840 (La.1989). As long as the determination is reasonable, based upon the record as a whole, an appellate court should not substitute its own judgment over the factfinder’s. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). This “manifest error” standard must allow a “great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.” Rosell at 844.
Under the facts of this ease and for the reasons below, we cannot say the jury verdict was manifestly erroneous or clearly wrong.
DUTY OF DRIVER
The operator of a motor vehicle, a dangerous instrumentality, has the constant duty to watch out for the possible.negligent acts of pedestrians and avoid injuring them. A higher standard of care than that required of pedestrians is imposed upon the motorist commensurate with the hazards his conduct inflicts upon the public safety. .... It must be noted, however, that a motorist who exercises all reasonable care to protect a pedestrian, who nonetheless suffers injury, is not at fault. Baumgartner v. State Farm Mut. Auto. Ins. Co., 356 So.2d 400, 406 (La.1978).
* ❖ * * ^ *
Although the law does not make a driver of a vehicle the insurer of a child’s safety, it does impose a high degree of care upon the driver and a duty to anticipate that a child, possessed with limited judgment, might be unable to appreciate impending danger, is likely to be inattentive, and might suddenly place himself in a position of peril. Torres v. U.S. Fidelity and Guar. Co., 499 So.2d 1293 (La.App. 4 Cir.1986).
The next issue raised by the plaintiff is whether this verdict can stand in light of the heightened duty a driver has when he knows there are children in the area. Massey v. Johnson, 488 So.2d 1233 (La.App. 4 Cir.1986), writ den., 494 So.2d 331 (La.1986). Mr. O’Connor testified there were often children playing on the sidewalks of Banks Street and that he travelled this road every day on his |4way to and from school. No one disputes Mr. O’Connor’s familiarity with the presence of children in this area. The question is whether Mr. O’Connor breached a duty.
In trial, the plaintiff attempted to question Mr. O’Connor’s actions immediately prior to the impact. Mr. O’Connor testified he slowed down in order to complete a lane change and that he hit the brakes when he saw the first child. His brother testified he “slammed” on the brakes when he noticed Richard Bogan. The plaintiff attempted to call into question Mr. O’Connor’s glancing to the left prior to executing a lane change because this diverted his attention from his lane of traffic. However, a lane change cannot be successfully executed without the proper precautions, and it is not negligence per se to change lanes when children are in the vicinity. In some cases, a lane change may be a prudent move. Richard Bogan darted from between two parked cars. Mr. O’Connor had no opportunity to see Richard Bogan prior to his entering the street since his line of vision was obscured. As soon as Mr. O’Connor spotted Richard Bogan, he made every effort to avoid the collision, including running up onto the neutral ground. The appellants stress Mr. O’Connor did not *1385 sound his horn, however, this' ease was not, and should not have been, decided solely on this issue.[4]
IgLouisiana law does not impose absolute liability on a motorist who hits a child in a dart-out situation. Aetna Gas. & Sur. Co. v. Nero, 425 So.2d 730 (La.1983). Mr. O’Connor was not speeding. There was no cross-walk. There was no traffic light. There were no school buses running at that late afternoon time. There were parked cars and large trees along the sides. Mr. O’Con-nor was paying very close attention to the details, as exhibited by his knowledge of the presence of people and other cars. There was no evidence to support a finding that Mr. O’Connor should have or could have seen Richard Bogan any sooner than he did. There is also no evidence to establish that Mr. O’Connor did anything negligent in his execution of the lane change.[5] There is no indication the outcome would have been any different had Mr. O’Connor not made a lane change and, in fact, he may have hit the child sooner and harder had he not been moving the vehicle further away.
In Torres v. U.S. Fidelity and Guar. Co., 499 So.2d 1293 (La.App. 4 Cir.1986), a case relied upon by the appellants, this Court affirmed a trial court award for personal injuries sustained by a minor child who was struck by a truck. The testimony consisted of the driver, who said he was traveling 3 or 4 m.p.h. when he struck the child, and an independent witness who said there were no obstructions to the driver’s view and the driver was travelling approximately 20 to 25 m.p.h. when he struck the child. The trial court’s credibility determination was not reversed on appeal. In our case, there was no conflicting testimony surrounding the basic facts of the afternoon and there were obstructions to the driver’s view.
|6The jury’s verdict will not be set aside and the trial court correctly denied the judgment notwithstanding the verdict. C.C.P. art. 1811.
QUANTIFICATION OF FAULT
The appellants next contend the trial judge effectively reinstated contributory negligence by failing to require a quantification of fault. C.C. art. 2323. The substantive right to allocate fault was created with the doctrine, of comparative fault. This is undisputed. However, the appellants argue a point which was never reached because the jury found Mr. O’Connor was not negligent. There was no need to quantify the fault of persons not involved in this litigation. The jury was not asked to determine the percentage of fault of the grandmother, a guardian, the city, the owners of the parked cars, or anyone else.[6]
If the jury had answered affirmatively that Mr. O’Connor was negligent, then the next step would have been to quantify this negligence. By answering that Mr. O’Connor’s negligence was not the proximate cause of Richard Bogan’s injuries, the jury effectively answered he had no quantifiable fault in this accident. We find no violation of the principles of comparative fault in this case.
JURY INTERROGATORY AND INSTRUCTIONS
We must note that the plaintiffs argued against using comparative fault to the court. Mr. Forshaq, the plaintiffs’ attorney, stated, “Move for motion that Richard Bogan is not capable, was not capable of the capacities to be negligent, and therefore eompara- *1386 tive fault should not be considered.” The court granted the motion. Mr. Forshaq cannot now assert that the trial court erred in failing to assign a percentage of fault to all parties, including Richard Bogan. Any objections to the jury instructions on comparative fault are waived due to the party’s failure to object stating specifically the matter to which he objects and the grounds |7of his objections. C.C.P. art. 1793. Egan v. Hullinghorst Industries, Inc., 537 So.2d 1226 (La.App. 4 Cir.1989).
The only jury interrogatory read, “Was James J. O’Connor, Jr. guilty of negligence that was the proximate cause of Richard Bogan’s damages?” The jury’s answer was “No.” The appellants claim this is confusing. However, there is nothing more that the court needs to know. It does not matter if the “no” answer applies only to Mr. O’Con-nor’s negligence or to the proximate cause or to the issue of whether damages were sustained. As long as there was a “no” to any of these factors, then there is no liability on the part of Mr. O’Connor. If there was any error in the wording of this interrogatory, the error was harmless.
Accordingly, for the reasons expressed above, the judgment of the trial court if hereby affirmed.

AFFIRMED.

. It was stipulated that Mr. Ruddock was in the rear seat of the vehicle and did not witness the events preceding this accident.

. The plaintiff, Richard Bogan, exhibited some learning deficiencies prior to this accident and the defendants vigorously dispute the causal link between the accident and the plaintiff's subsequent behavioral problems.

.The plaintiff filed A Motion for Judgment Notwithstanding the Verdict or in the Alternative Motion for New Trial, which was denied on February 6, 1997.

. R.S. 32:214 requires precaution when children are around and reads in full:
Notwithstanding the foregoing provisions of this Part, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway.

. Compare Johnson v. Safeway Insurance Co., 96-910 (La.App. 3 Cir. 2/19/97), 694 So.2d 411, writ den., 97-1750 (La. 10/17/97), 701 So.2d 1330, where the Third Circuit reversed the trial court judgment and imputed fifty percent fault to the driver in a dart-out situation since the driver "did not exhibit the high degree of care required of a motorist under the circumstances.” The driver was in a residential area, with many children, at school bus time. The court reasoned the driver should have used more caution knowing that children would be darting in and out of the street.

.The trial judge concluded Richard Bogan was incapable of negligence. He was nine years old at the time of this accident, however, he did not have the mental capacity of a nine year old.