# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-563

**DELISA MITCHELL, INDIVIDUALLY AND**
**ON BEHALF OF HER MINOR CHILD, DARION MITCHELL**

**VERSUS**

**ALBERT ROY, JR., AND**
**IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY**

************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2008-4964
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

************

## DAVID E. CHATELAIN[*]
## JUDGE

************

Court composed of Marc T. Amy, Billy Howard Ezell, and David E. Chatelain, Judges.

**AMENDED IN PART, REVERSED IN PART, AND AFFIRMED AS AMENDED.**

**Gregory P. Marceaux**
**Attorney at Law**
**2901 Hodges Street**
**Lake Charles, Louisiana 70601**
**(337) 310-2233**
**Counsel for Plaintiff/Appellee:**
     **Delisa Mitchell, Individually and**
     **On Behalf of her minor child, Darion Mitchell**

---

[*]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**James P. Doherty, III**
**Frederick Law Firm**
**Post Office Box 52880**
**Lafayette, Louisiana  70505**
**(337) 269-5143**
**Counsel for Defendants/Appellants:**
**Albert Roy, Jr.**
**Imperial Fire and Casualty Insurance Company**

**CHATELAIN, Judge.**

The defendants, Imperial Fire and Casualty Insurance Company (Imperial) and Albert Roy, Jr. (Roy), appeal from a judgment rendered against them and in favor of the plaintiff, Delisa Mitchell (Delisa), individually and on behalf of her minor son, Darion Mitchell (Darion). For the following reasons, we amend in part, reverse in part, and render.

### FACTS AND PROCEDURAL HISTORY

Darion, who was ten years of age at the time, was injured on March 14, 2008, when he rode his bicycle into the path of a 1999 Chevrolet Venture minivan that Roy was driving. The accident occurred on 8th Avenue between 9th and 10th Streets in Lake Charles, Louisiana, at approximately 4:30 p.m. Upon impact, Darion, who was not wearing a safety helmet, struck his head on the windshield when he was thrown onto the minivan's hood.

Acadian Ambulance transported Darion from the scene of the accident to Christus St. Patrick's Hospital. He underwent CT scans of the head and cervical spine and X rays of his right shoulder, chest, pelvis, and abdomen. The CT scan of Darion's head revealed some mild soft tissue swelling; otherwise, the test results were within normal limits and no fractures were noted. He was diagnosed with a head injury and scalp lacerations, and he received sutures and staples to those areas before being discharged from the hospital later that same evening.

On September 23, 2008, the plaintiff filed a petition for damages against Roy and his automobile liability insurer, Imperial. She alleged that Roy had negligently caused the accident by traveling in excess of the posted speed limit, by failing to keep a proper lookout, and by failing to do what he should have done to avoid the

1

collision. The defendants answered the petition, asserting that the plaintiff's damages were caused when Darion recklessly operated his bicycle.

The matter proceeded to a bench trial on January 5, 2010, following which the trial court stated from the bench that Roy's negligence was the sole cause of the accident. The trial court determined that Imperial and Roy were solidary obligors up to the $10,000.00 limit of Roy's policy with Imperial and awarded damages in favor of Delisa, on behalf of Darion, as follows: $10,000.00 for pain and suffering, $5,000.00 for mental anguish, $10,000.00 for scarring and disfigurement, and $11,706.27 for medical expenses. The trial court also awarded Delisa $3,000.00 for her loss of consortium damages.

The defendants now appeal, asserting that the trial court erred in the following respects: (1) in allowing Angela Dodd (Dodd), a witness, to offer a lay opinion concerning the speed the Roy vehicle was traveling prior to the accident; (2) in holding Roy to a higher degree of care than ordinary care; (3) in not assigning any fault to Darion for failing to keep a proper lookout for hazards; (4) in not assigning any fault to Delisa for violating La.R.S. 32:199, the bicycle safety helmet law; and, (5) in making an award of loss of consortium to Delisa.

**DISCUSSION**

The Louisiana Supreme Court, in *Siverd v. Permanent General Insurance Co.*, 05-973, p. 3 (La. 2/22/06), 922 So.2d 497, 499-500 (citations omitted), set out the standard of review applicable to this matter:

> A court of appeal should not set aside the factual findings of a trial court absent manifest error or unless clearly wrong. However, if a court of appeal finds that the trial court committed a reversible error of law or manifest error of fact, the court of appeal must ascertain the facts de novo from the record and render a judgment on the merits. Although appellate courts should accord deference to the factfinder, they

2

nonetheless have a constitutional duty to review facts. Because appellate courts must perform this constitutional function, they have every right to determine whether the trial court verdict was clearly wrong based on the evidence or clearly without evidentiary support. The reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's findings; it must instead review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was reasonable.

"[W]here there is conflict in the testimony, inferences of fact should not be disturbed upon review, even though the reviewing court may feel that its own evaluations and inferences are as reasonable." *Linnear v. CenterPoint Energy Entex/Reliant Energy*, 06-3030, p. 11 (La. 9/5/07), 966 So.2d 36, 44.

In *Stobart v. State of Louisiana, through Department of Transportation & Development*, 617 So.2d 880, 882-83 (La.1993) (citations omitted), a case upon which the *Siverd* court relied, the supreme court offered the following guidance where a trial court's findings are based on conflicting testimony:

[R]easonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. . . .

. . . Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.

In the present case, the trial court ruled as follows:

The Court finds in favor of the plaintiffs specifically finding that the accident was caused by the sole fault and negligence of Mr. Roy, the defendant. And that's based primarily on the third party independent witness, Ms. Dodd, who has some rather compelling testimony regarding the speed of the Roy vehicle. And even though she gave an

3

estimate of the speed, I think looking at her testimony as a whole, it's clear that she was able to determine that his vehicle was traveling greater than 25 miles an hour. How much greater, we don't really know. It kicked up dust. It immediately brought itself to her attention because of that. And she made a contemporaneous comment to her niece about the speed of that vehicle. That is very compelling, persuasive testimony that is more persuasive, much more persuasive than the testimony of Mr. Roy and/or Mr. Fernandez.

She also noted that there were over eight kids playing on the street at the time of the incident; and her testimony was that many of these children were in her vicinity, which means that the Roy vehicle passed them before they reached the point of impact with Darion Mitchell, which means that not only did Mr. Roy violate his degree of care that he owed to Darion Mitchell; he also violated it as to the other children, because once he saw any child on the street, he had the highest degree of care owed to those children.

And contrary to the defendant's recitation to the Court of the law, it's not that the motorist simply has a duty to use ordinary care. Once that motorist knew or should have known - - in this case, knew- - because either he saw them or he should have seen them, plus he had notice from his passenger that there was one child in the area, Darion, he did not exercise the highest degree of care. He only reacted when it was too late instead of anticipating that children would do things suddenly and without warning and would put themselves in danger.

So Mr. Roy was going too fast. He did not take into account that there were children in the area. He ignored his friend's warning until it was too late.

The physical evidence clearly contradicts the testimony of Roy and Fernandez, because the accident could not have happened the way they say it happened. The middle of the - - or even middle to driver's side part of the bumper at least the middle part of the bumper to the Roy vehicle was damaged, and the left side of the bike was damaged clearly indicating that the vehicle hit the bike, not the other way around.

So the fault is a hundred percent against the defendant.

### Admissibility of Opinion Testimony Regarding Roy's Speed

The defendants contend that Dodd's testimony regarding the speed the Roy vehicle was traveling based on the movement of dust on the street "was not rationally based on perception." Dodd explained that she had in the past operated her own

4

vehicle at various speeds ranging from twenty to forty miles per hour and that the environment appeared different at those varying rates of speed. Based upon those prior observations, she estimated that the Roy vehicle was traveling between thirty-five and forty miles per hour just before the accident. The defendants submit that Dodd should not have been allowed to present testimony as to the speed of the Roy vehicle because her observations were made when she was sitting stationary in her front yard, thus giving her the impression that the Roy vehicle was moving faster than the speed at which it was actually traveling. Finally, the defendants point out that the testimony of Officer Andrea LeLeaux contradicted some of Dodd's testimony. Specifically, Dodd stated that Roy had slammed on his brakes and skidded, but Officer LeLeaux testified that she had looked for skid marks in her investigation of the accident and had found none. The defendants argue that this contradiction "further undercut[s] the reliability of Dodd's testimony" regarding the speed of the Roy vehicle. The plaintiff counters that Dodd's testimony met the requirements of La.Code Evid. art. 701, and, thus, the trial court acted within its discretion when allowing her to testify.

Louisiana Code of Evidence Article 701 guides us in our assessment of the admissibility of a lay witness's opinion testimony. It provides as follows:

> If the witness is not testifying as an expert, his testimony in the form of opinion or inferences is limited to those opinions or inferences which are:
>
> (1) Rationally based on the perception of the witness; and
>
> (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

"The general rule is that a lay witness is permitted to draw reasonable inferences from his or her personal observations." *State v. LeBlanc*, 05-885, p. 7

5

(La.App. 1 Cir. 2/10/06), 928 So.2d 599, 603. "If the testimony constitutes a natural inference from what was observed, no prohibition against it as the opinion of a non-expert exists as long as the lay witness states the observed facts as well." *Id*. The *LeBlanc* court discussed the appellate standard of review regarding testimony admitted pursuant to La.Code Evid. art. 701:

> A reviewing court must ask two pertinent questions to determine whether the trial court properly allowed lay opinion testimony: (1) was the testimony speculative opinion evidence or simply a recitation of or inferences from fact based upon the witness's observations; and (2) if erroneously admitted, was the testimony so prejudicial to the defense as to constitute reversible error.

*LeBlanc,* 928 So.2d at 603.

In reaching a decision on this alleged evidentiary error, this court must consider whether the challenged ruling was erroneous and whether the error "prejudice[d] the defendants' cause, for unless it d[id], reversal is not warranted." *Wallace v. Upjohn Co.*, 535 So.2d 1110, 1118 (La.App. 1 Cir. 1988), *writ denied*, 539 So.2d 630 (La.1989); La.Code Evid. art. 103. "Moreover, the party alleging error has the burden of showing the error was prejudicial" and had "a substantial effect on the outcome of the case." *Brumfield v. Guilmino*, 93-366, p. 12 (La.App. 1 Cir. 3/11/94), 633 So.2d 903, 911, *writ denied*, 94-806 (La. 5/6/94), 637 So.2d 1056. Ultimately, "the determination is whether the error, when compared to the record in its totality, has a substantial effect on the outcome of the case." *Wallace*, 535 So.2d at 1118. "Absent a prejudicial error of law, this Court is not required to review the appellate record de novo." *Brumfield*, 633 So.2d at 911 (citing *Rosell v. ESCO*, 549 So.2d 840 (La.1989)).

In overruling the defendants' evidentiary objections to Dodd's lay opinion testimony about the speed of the Roy vehicle, the trial court stated that it would "take

into consideration that [Dodd] is not an expert on speed" and that it would consider her opinion "in the context of just a lay impression." We are satisfied that the trial court properly allowed Dodd to testify as to the inferences she drew based upon her personal observations, that the trial court gave the proper weight to Dodd's opinion testimony, and that Dodd's testimony aided the trial court in determining a fact in issue. Moreover, we are convinced that even if the testimony was erroneously admitted, it was not so prejudicial to the defendants as to constitute reversible error, especially because this matter was a bench trial.

### *Standard of Care Applicable to Roy*

Roy testified that he did not see any children on 8th Avenue until he and his passenger simultaneously noticed Darion, and he took immediate evasive action by moving to the left of the roadway and braking his vehicle. The defendants argue that no factors were present to trigger a heightened duty of care on Roy's part, and he acted reasonably and properly once he saw Darion. As a result, citing *Thomas*, the defendants submit that Roy should not have been assessed any fault for causing the accident.

The plaintiff contends that the trial court properly held Roy to a high degree of care after hearing Dodd's testimony that despite the presence of at least eight children near the street in the area where the accident occurred, Roy nonetheless continued to travel at a high rate of speed, making it all but impossible for him to avoid the accident with young Darion.

"Louisiana law does not impose absolute liability on a motorist who hits a child in a dart-out situation." *Bogan v. O'Connor*, 97-1205, p. 5 (La.App. 4 Cir. 12/17/97), 703 So.2d 1382, 1385, *writ denied*, 98-145 (La. 3/20/98), 715 So.2d 1212. "Although

7

the law does not make a driver of a vehicle the insurer of a child's safety, it does impose a high degree of care upon the driver and a duty to anticipate that a child, possessed with limited judgment, might be unable to appreciate impending danger, is likely to be inattentive, and might suddenly place himself in a position of peril." *Thomas v. Duncan*, 41,938, p. 5 (La.App. 2 Cir. 3/7/07), 954 So.2d 218, 221-22. In *Scardina v. State Farm Mutual Automobile Insurance Co.*, 597 So.2d 1148, 1150 (La. App. 1 Cir.) (citations omitted), *writ denied*, 604 So.2d 1004 (La.1992), the first circuit observed:

> Although the duty of a driver charged with the knowledge of children near the roadway is heightened, the duty is not limitless. Upon seeing children near the roadside, a motorist is expected to react appropriately, but a driver does not necessarily have a duty to stop. Motorists driving near children are charged with a high degree of care, but the driver is not an insurer of every child's safety.

> When a driver has employed all reasonable precautions to avoid an accident, and a sudden act of a child creates an emergency rendering it impossible for the motorist to avoid striking the child, the accident is considered unavoidable and the motorist is not liable. In other words, if a motorist is proceeding at a lawful and reasonable rate of speed, maintaining a proper lookout, and otherwise obeying the rules of the road, he will not be held liable for injuries to a child who suddenly darts or dashes into the path of his vehicle from a concealed position in such a way that an accident cannot be avoided. Each case must be considered in light of its particular set of circumstances.

The trial court was presented with conflicting testimony regarding whether Roy knew or should have known that there were children present as he was traveling down 8th Avenue, thus subjecting him to a higher standard of care. After carefully reviewing the record evidence, we cannot say that the trial court's decision to believe Dodd rather than Roy and his passenger was manifestly erroneous or clearly wrong, and we will not second guess the credibility call made by the trial court. The trial

court was justified in holding Roy to a heightened standard of care. Therefore, we find no merit to the defendants' assignment of error.

***Allocation of Fault***

The defendants next contend that the trial court manifestly erred when it found Roy totally at fault. They argue that some fault should be attributed to Darion for failing to keep a proper lookout for hazards and to Delisa for knowingly allowing Darion, a child under the age of twelve, to operate his bicycle on a public roadway without wearing an approved helmet.

Louisiana Civil Code Article 2323(A), generally known as the "comparative fault" article, directs that "[i]n any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined." The article further provides that "[i]f a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss." La.Civ.Code art. 2323(A).

"The determination of whether comparative fault is applicable is a legal question to be decided by the court." *Precht v. Case Corp.*, 99-1296, p. 14 (La.App. 3 Cir. 2/16/00), 756 So.2d 488, 498, *writ denied*, 00-791 (La. 5/5/00), 761 So.2d 546. That being said, "allocation of fault is a factual determination subject to the manifest error rule." *Theriot v. Lasseigne*, 93-2661, p. 10 (La. 7/5/94), 640 So.2d 1305, 1313.

> In assessing the nature of the conduct of the parties, various factors may influence the degree of fault, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what

9

was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. The finding of percentages of fault pursuant to the comparative fault article is a factual determination. If the court of appeal finds a clearly wrong apportionment of fault, it should adjust the allocation, but only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion.

*Rideau v. State Farm Mut. Auto. Ins. Co.*, 06-894, p. 9 (La.App. 1 Cir. 8/29/07), 970 So.2d 564, 574 (citations omitted), *writ denied*, 07-2228 (La. 1/11/08), 972 So.2d 1168.

The following colloquy was exchanged as the trial court explained its ruling in this matter:

MR. DOHERTY:
Is the Court making a factual finding that the plaintiff, Darion Mitchell, was not of the age of discernment - -

THE COURT:
Well, the standard - -

MR. DOHERTY:
- - or was incapable of discernment for other reasons?

THE COURT:
The standard on his fault is the self care expected of a child of his age, ten years old, intelligence and experience under the particular circumstances presented to him.

What I find is that the accident happened but for Mr. Roy's violation of his high duty towards children in the area where he's driving his vehicle. This is not to say that under a different set of circumstances if Darion is riding his bike and rides out in the middle of the street that he's not going to be found at fault. He's just not at fault in this situation, because Mr. Roy is completely at fault for driving too fast, being warned, ignoring other children, ignoring this child. He's solely at fault.

So if I look at the duty owed by Darion, under the circumstances, I just find that he has no fault under that standard, under these facts.

. . . .

> I don't think I have to make a ruling as to age of discernment. He was ten years old. For a ten-year-old under these circumstances with a driver who should have seen, was warned, he doesn't have any fault; the fault is all on Mr. Roy.

The defendants contend that Delisa testified that she had instructed Darion to be aware of vehicular traffic when riding his bicycle and to look both ways before crossing the street. At trial, Darion confirmed that he had received those instructions from his mother. The defendants also submit that certain aspects of Darion's testimony about what happened just before the accident simply do not add up. On one hand, Darion stated that before he attempted to cross the street, he pedaled from the sidewalk and through a three-foot strip of grass where he stopped to look both ways for "a few minutes." He noticed Ms. Dodd and some kids down the street, but he saw no cars traveling on the street. On the other hand, Darion stated that he was hit by Roy's van almost immediately after he entered the street; in fact, the rear wheel of his bicycle was still on or near the curb at the time of impact. The defendants contend that given the fact that Ms. Dodd testified that there was nothing blocking Darion's view of the street or the Roy vehicle at the time of the accident, Darion should have seen and/or heard the Roy vehicle in advance of his darting into the street.

As a corollary to their contention that Darion and/or Delisa should have been assigned some or all of the fault in causing the accident, the defendants argue, citing *Thomas*, 954 So.2d 218, and *Bogan*, 703 So.2d 1382, that Roy should not have been assessed any fault because he was faced with the sudden act of a child that created an

emergency and rendered it impossible for him to prevent the accident despite his having taken all reasonable precautions.

The plaintiff counters that it was "not unreasonable to expect a ten year old riding a bike in a residential neighborhood, to ride his bike from a driveway into the street." The plaintiff further submits that the evidence does not support Roy's "newly manufactured defense" that upon seeing and being warned of Darion's presence near the roadway, he braked his vehicle to a stop, whereupon Darion, who was pedaling fast with his head down, slammed into the front of his vehicle. Officer LeLeaux testified that Roy told her that as he was traveling down 8th Avenue, a child on a bicycle came out right in front of him. Although he swerved in an attempt to miss the child, Roy nonetheless struck the child. When counsel for plaintiff questioned Officer LeLeaux, she stated that she would have noted in her report if Roy had told her that he stopped his vehicle before the impact. The plaintiff further contends that, if the defendants' version of the accident was true, Darion's bicycle would have been damaged on the front instead of on the side as documented in Officer LeLeaux's report. Notwithstanding, the plaintiff offers no jurisprudential support for her contention that the trial court correctly held that Darion was not guilty of any fault under the facts of this case.

In *Keel v. Thompson*, 392 So.2d 713 (La.App. 3 Cir. 1980), the parents of a nine-year-old boy who was struck by a vehicle after he failed to stop at a stop sign before entering the street brought suit against the driver and her insurer. Where the evidence established that the driver "was proceeding at a safe speed, considerably below the speed limit," "there was nothing to indicate that children were playing or riding bicycles in that area," and the driver's view was blocked by a large bush, the

12

appellate court affirmed the trial court's finding that the driver was free from any negligence. *Id.* at 716.

In *Johnson v. Safeway Insurance Co.*, 96-910 (La.App. 3 Cir. 2/19/97), 694 So.2d 411, *writ denied*, 97-1750 (La. 10/17/97), 701 So.2d 1330, the trial court dismissed a suit brought by the mother of a six-year-old child who was struck by a car as he darted across a street, noting that the driver's line of vision was blocked by hedges and that the driver had done his best to avoid the accident. On appeal, fault was assessed at fifty percent each to the driver and the child. The appellate court based its fault assessment on its finding that the driver owed a high degree of care because of the presence of children in the area and its reversal of the trial court's factual finding that the driver's view was totally obscured, along with its determination that "a six year old boy understands he should not cross a street without first looking for oncoming traffic." *Id.* at 414.

In *Bogan*, 703 So.2d 1382, suit was filed on behalf of a nine-year-old who was injured when he was struck by a vehicle after darting into the street from between two parked cars. Following a jury trial, the driver was found free from negligence in causing the accident. The fourth circuit affirmed, noting that there was no evidence that the driver could have or should have seen the child any sooner than he did because of parked cars and large trees on the side of the roadway, the driver was aware of the presence of children in the area and was paying close attention to his surroundings, and he was not speeding.[1]

---

[1]Because the jury effectively determined that the driver had no quantifiable fault, the jury was not asked to quantify the fault of any other person or entity. Nevertheless, the appellate court noted the trial court's conclusion that the nine-year-old boy, who had exhibited some learning deficiencies prior to the accident, was incapable of negligence because he did not have the mental capacity of a typical nine year old. *Bogan*, 703 So.2d 1382.

In *Rideau*, 970 So.2d 564, a ten-year-old girl was killed when a truck hit her as she tried to cross the road. After a jury trial, the truck driver was found sixty percent at fault and the child and her mother were each found to be twenty percent at fault. On appeal, the first circuit found error in the trial court's failure to grant the plaintiffs' request for a judgment notwithstanding the verdict to strike either the twenty percent fault of the child or her mother and to proportionally re-allocate fault to the other. In doing so, the appellate court reasoned that because the evidence showed that the ten year old was a mature and intelligent child who had be instructed on how to safely cross the street on her own and had done so many times in the past, she had the "duty and responsibility to take the necessary steps to ensure her own safety when crossing the road." *Id*. at 574. That being the case, her mother "had no duty to supervise her every time she needed to cross the road" and thus "could not be at fault for failing to help [her] cross the road on this occasion." *Id*. at 574-75. As a result, the court reversed the jury's imposition of fault on the mother and re-assigned it to her daughter after determining that, although the driver and the child "were almost equally at fault in causing [the] accident," the driver should bear the higher percentage of fault because "[t]he risk created by his inattention or inadvertence was great, and he was in a superior position to avoid the accident." *Id*. at 579.

After reviewing the jurisprudence and the particular facts of the case now before us, we are convinced that the trial court committed manifest error in failing to assign any fault to Darion. Delisa testified that her son had been instructed on how to safely cross the street and he had been allowed to ride his bicycle, alone, to his friends' houses in the neighborhood for three or four years before this accident

14

occurred.  Like the child in *Rideau*, Darion had the "duty and responsibility to take the necessary steps to ensure [his] own safety when crossing the road," and he must bear some fault in causing the accident.  *Rideau*, 970 So.2d at 574.

The defendants further contend that the trial court manifestly erred when it failed to cast Delisa with some fault for failing to require Darion to wear a bicycle helmet as required in La.R.S. 32:199.  With regard to the defendants' claims that Delisa should share a percentage of fault, the plaintiff analogizes the helmet law to the law requiring the use of safety belts in vehicles.  Because Louisiana law specifically recognizes that evidence of the failure to wear a safety belt should not be considered evidence of comparative negligence, the plaintiff argues that the same policy should operate to prevent evidence of Darion's helmet non-use as a basis for finding Delisa at fault in this situation.  Consequently, the plaintiff submits that the trial court did not commit manifest error when it chose not to cast Delisa partially at fault in causing the accident.  For reasons which follow, we find merit to the defendants' contentions and find the plaintiff's argument misplaced.

Louisiana Revised Statutes 32:199 (emphasis added) provides, in pertinent part:

> B. With regard to any bicycle used on a public roadway, public bicycle path, or other public right-of-way, no parent, guardian, or person with legal responsibility for the safety and welfare of a child shall knowingly allow any of the following:
>
> (1) Such child under the age of twelve to operate or ride as a passenger on a bicycle without wearing an approved helmet of good fit fastened securely upon the head with the straps of the helmet.
>
> . . . .
>
> D. The issuance of a citation for a violation of this Section shall not be prima facie evidence of negligence. *The comparative negligence*

15

*statutes of Louisiana shall apply in these cases as in all other cases of negligence.*

We begin, as we must, with the words of the statute at issue. Although interpretation of La.R.S. 32:199 is res nova, well-established principles of statutory interpretation guide our inquiry. "The starting point in the interpretation of any statute is the language of the statute itself." *Theriot v. Midland Risk Ins. Co.*, 95-2895, p. 3 (La. 5/20/97), 694 So.2d 184, 186. "Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language." La.R.S. 1:3. "The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law." *Kinchen v. Livingston Parish Council*, 07-478, p. 5 (La. 10/16/07), 967 So.2d 1137, 1140, (quoting *Colvin v. La. Patients Comp. Fund Oversight Bd.*, 06-1104 (La. 1/17/07), 947 So.2d 15). Louisiana Civil Code Article 9 states that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." We find no ambiguity in La.R.S. 32:199, which particularly states, "[t]he comparative negligence statutes of Louisiana *shall* apply in these cases as in all other cases of negligence." (Emphasis added.) Accordingly, we need not consider the intent of the legislature in applying the statute. Moreover, given the distinct word choice and straightforward statutory language, we see no need to

16

analogize La.R.S. 32:199 to this state's automobile safety belt law as codified in La.R.S. 32:295.1.[2]

In the present case, it is clear Darion was not wearing a bicycle safety helmet at the time of the accident. More specifically, Delisa testified that she knew Darion was not wearing a helmet because he had outgrown the one she had previously bought for him, and she had not replaced it.

It is equally clear that Darion hit his head on the windshield of Roy's vehicle. As a direct result of that impact, Darion had some glass in his head and staples had to be inserted on his forehead and above his left ear. As the evidence bears out, there was a direct relationship between the non-use of a bicycle safety helmet and the injuries incurred. Accordingly, we find that the trial court manifestly erred when it failed to cast Delisa with a percentage of fault.

Because the trial court erred in assigning all of the fault to Roy, we must now adjust the fault allocation but only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion. *See Clement v. Frey*, 95-1119 (La. 1/16/96), 666 So.2d 607. We have found that the trial court properly applied a heightened degree of care upon Roy because he knew or should have known that children were present where he was traveling on 8th Avenue. Similar to the defendant driver in *Rideau*, "[t]he risk created by his inattention or inadvertence was great, and he was in a superior position to avoid the

---

[2]In stark contrast to the provisions of La.R.S. 32:199, the legislature specifically provided that the "failure to wear a safety belt [in an automobile] . . . shall not be considered evidence of comparative negligence." La.R.S. 32:295.1(E). "When analyzing legislative history, it is presumed the Legislature's actions in crafting a law were knowing and intentional." *Foti v. Holliday*, 09-93, pp. 6-7 (La. 10/30/09), 27 So.3d 813, 817. More particularly, "the Legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject. Thus, legislative language will be interpreted on the assumption the Legislature was aware of existing statutes, well established principles of statutory construction and with knowledge of the effect of their acts and a purpose in view." *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371, pp. 13-14 (La. 7/1/08), 998 So.2d 16, 27 (citations omitted).

accident." *Rideau*, 970 So.2d at 579. We have also found that Darion and Delisa should have been cast with some degree of fault. After thoroughly considering all of the evidence before us, we allocate sixty percent fault to Roy, twenty-five percent fault to Darion, and fifteen percent fault to Delisa.[3]

## *Loss of Consortium Award*

In the present case, the defendants contend that no evidence was presented to support Delisa's loss of consortium claim. They submit that the testimony indicated that the relationship between Delisa and Darion did not suffer as a result of the accident and that they were able to participate in the same activities that they enjoyed before the accident. In addition, Darion has continued to assist with household chores since the accident. Finally, the defendants point to the absence of any testimony to show that Delisa lost any financial support, aid, or assistance as a result of Darion's being injured. The defendants admit that although Delisa was understandably worried about her son after the accident, such worry cannot serve as the basis for her loss of consortium award.[4]

The plaintiff counters that the evidence presented supports her claim that she suffered the loss of love, affection, society, and companionship as a result of Darion's accident. She rode with Darion in the ambulance after the accident and was present at the hospital when he was checked for serious head and vertebral injuries. She also had to remove glass from Darion's forehead for a week after the accident, and she

---

[3]In assessing fault to both Darion and Delisa, we find the decision in *Rideau*, 970 So.2d 564, distinguishable in one aspect. In that case, the first circuit concluded it could not cast the mother and the child both with fault. Unlike that case, Darion is at fault for failing to take steps necessary to ensure his own safety, and Delisa is independently at fault for allowing Darion to ride a bicycle without wearing an approved helmet.

[4]The defendants point out that Delisa did not make a claim for, nor would she be able to prove her entitlement to, bystander damages pursuant to *Lejuene v. Rayne Branch Hospital*, 556 So.2d 559 (La.1990).

was present when the staples were removed from Darion's head. She adds that she would like to have the scar on Darion's forehead removed but that she does not have the funds to do so.

> Civil Code art. 2315 gives parents a cause of action for loss of consortium when their child is injured by the fault of another. Parents must prove, by a preponderance of the evidence, any one or more of the following: (1) loss of love and affection, (2) loss of society and companionship, (3) loss of performance of material services, (4) loss of financial support, (5) loss of aid and assistance, and/or (6) loss of fidelity.

> A child may sustain physical injury without necessarily causing his parents a loss of consortium. Mental anguish suffered by the parents because of an injury to their child is not compensable in a loss of consortium claim.

*Morrison v. Kappa Alpha Psi Fraternity*, 31,805, p. 23 (La.App. 2 Cir. 5/7/99), 738 So.2d 1105, 1122, *writs denied*, 99-1607 (La. 9/24/99), 749 So.2d 634, 99-1622 (La. 9/24/99), 749 So.2d 635, 99-1668 (La. 9/24/99), 747 So.2d 1120.

In *Morrison*, a college freshman was injured in a fraternity hazing incident. Thereafter, he and his parents filed suit against the fraternity and several other defendants. Following a jury trial, the student was awarded general damages and damages for past and future medical expenses. The jury additionally found that the student's parents had suffered a loss of consortium, but it declined to award them any damages. On appeal, the second circuit determined that the jury had erred in finding that the student's parents had proved any element of their loss of consortium claim by a preponderance of the evidence, noting that "[t]here was absolutely no evidence that they were dependant upon their son materially or financially, nor did they prove that they were deprived of his love, affection, society or companionship. *Id*. at 1122-23. The court further noted that while the parents' testimonies "would possibly support the conclusion that they suffered mental anguish as a result of [their son's]

19

injuries, . . . a claim for loss of consortium does not include mental anguish suffered as a result of physical injury to their son." *Id*. at 1123. *See also Precht*, 756 So.2d 488 (on appeal, parents of six-year-old girl severely burned while riding tractor with her uncle awarded $5,000.00 each for loss of consortium where evidence showed that parents had to administer painful scrubbings of her burns for several months); *Simpson v. State through Dep't of Transp. & Dev.*, 636 So.2d 608 (La.App. 1 Cir. 1993), *writs denied*, 637 So.2d 471 (La.1994) ($50,000.00 award each to both parents of fifteen-year-old who suffered the traumatic amputation of both legs when truck he was driving went out of control on a trestle bridge in heavy downpour reversed on appeal where no evidence was offered to show they were materially dependent on son or that they were deprived of his love and affection).

As was noted in *Simpson*, *Precht*, and *Morrison*, the mental anguish a parent suffered as a result of an injury their child suffered simply cannot serve as the basis for an award of loss of consortium. After applying the facts of this case to the relevant jurisprudence, we conclude that the trial court erred in making a loss of consortium award to Delisa. Accordingly, the $3,000.00 award made to Delisa for her own loss of consortium is hereby reversed.

**DECREE**

For the foregoing reasons, we amend the judgment of January 20, 2010 to re-allocate the percentage of fault assigned to sixty percent to Albert Roy, Jr, twenty-five percent to Darion Mitchell, and fifteen percent to Delisa Mitchell. Accordingly, judgment is rendered in favor of Delisa Mitchell, on behalf of her minor child, Darion Mitchell, and against Imperial Fire and Casualty Company and Albert Roy, Jr. for sixty percent of $36,706.27, or $22,023.76. The judgment is further amended to

20

reverse the $3,000.00 award made to Delisa for loss of consortium.  The judgment is

affirmed in all other respects.  Each party is to bear its own costs for this appeal.

**AMENDED IN PART, REVERSED IN PART, AND AFFIRMED AS AMENDED.**