NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2025 CA 0041

WILLIAM J. HOLLIDAY

VERSUS

STARR INDEMNITY & LIABILITY COMPANY,
MMR GROUP, INC., AND JEREMY BRUSER

Judgment Rendered: _____OCT 2 2 2025_____

* * * * *

ON APPEAL FROM THE
NINETEENTH JUDICIAL DISTRICT COURT, SECTION 22
IN AND FOR THE PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA
DOCKET NUMBER 702,669

HONORABLE BEAU M. HIGGINBOTHAM, JUDGE PRESIDING

* * * * *

| | |
|---|---|
| Brett M. Bollinger<br>Jeffrey E. McDonald<br>Brad D. Ferrand<br>Covington, Louisiana | Attorneys for Defendants-Appellants<br>Starr Indemnity & Liability Company,<br>MMR Group, Inc., &<br>Jeremy Bruser |
| Charles L. Trichell<br>Kelsey B. Yarbrough<br>Baton Rouge, Louisiana | Attorneys for Plaintiff-Appellee<br>William J. Holliday |

**BEFORE: MILLER, EDWARDS, AND FIELDS, JJ.**

Edwards, J. concurs w/ reason

**FIELDS, J.**

Following a jury trial and award of damages arising out of a motor vehicle accident, defendants appeal the trial court's evidentiary rulings excluding certain evidence from the jury, as well as the amount of the future medical expenses awarded. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On December 18, 2019, William J. Holliday was driving his vehicle westbound on Interstate 10 when defendant, Jeremy Bruser, swerved into Mr. Holliday's lane of travel causing a collision between their two vehicles.[1] On December 15, 2020, Mr. Holliday filed suit against Mr. Bruser, as well as Mr. Bruser's employer, MMR Group, Inc., and Starr Indemnity & Liability Company (collectively "defendants"), seeking damages for personal injuries he allegedly sustained in the accident including future medical expenses, rehabilitation therapy, and diagnostic procedures.

Trial by jury took place in late November 2023. At the conclusion of Mr. Holliday's case-in-chief, defendants moved for a directed verdict on the issue of future medical expenses, specifically, expenses or damages associated with a spinal cord stimulator and future surgery, arguing that the necessity for either was not proven with any certainty. This motion was denied by the trial court. At the conclusion of the four-day trial, the jury found by a vote of 10-2 that Mr. Holliday sustained injuries caused by the motor vehicle accident with Mr. Bruser.[2] Pertinent to the instant appeal, the jury, by a vote of 9-3, awarded Mr. Holliday $600,000.00

---

[1] It is undisputed that Mr. Bruser was in the course and scope of his employment at the time of the accident.

[2] At the beginning of trial, the parties stipulated that defendants were 100% at fault for causing the motor vehicle accident.

2

for future medical expenses.[3] A judgment was signed on February 8, 2024, in accordance with the jury's verdict.

Defendants moved for a judgment notwithstanding the verdict (JNOV), asserting that Mr. Holliday had not proven that it was more probable than not that he would require certain medical care in the future. Therefore, defendants argued the jury's verdict was not supported by the evidence and prayed the future medical expenses award be reduced to $376,089.00. Defendants also moved for a new trial, arguing that the trial court's erroneous rulings on certain evidentiary matters severely prejudiced them and allowed for Mr. Holliday to present an un-rebuttable narrative to the jury. After a hearing on July 22, 2024, the trial court signed a judgment denying defendants' motions for new trial and JNOV. Defendants filed a motion to suspensively appeal the February 8, 2024 judgment, which is the subject of this appeal.

## ASSIGNMENTS OF ERROR

1. The trial court erred in denying defendants meaningful cross-examination of Deana Hodges and Dr. Thomas Rathmann.

2. The trial court erred in denying defendants' motion for new trial.

3. The trial court erred in denying defendants' motion for directed verdict.

4. The jury erred in awarding Mr. Holliday sums for future medical expenses where it had not been proven that the future procedures were medically indicated or that claimed future medical expenses for such procedures would more probably than not be incurred.

5. The trial court erred in permitting the jury to hear expert testimony concerning the costs of future medical procedures where it had not been proven that such future procedures were medically indicated or that claimed future medical expenses for such procedures would more probably than not be incurred.

---

[3] The jury also awarded Mr. Holliday $180,518.00 for past medical expenses; $10,000.00 for past physical pain and suffering; $50,000.00 for future physical pain and suffering; $5,000.00 for past mental pain and anguish; $40,0000.00 for future mental pain and anguish; $1,000.00 for past loss enjoyment of life; and $45,000.00 for future loss of enjoyment of life.

3

6. The trial court erred in denying defendants' motion for JNOV.[4]

## LAW AND ANALYSIS

**Exclusion of Evidence (Assignment of Error One)**

In their first assignment of error, defendants urge that the trial court erroneously precluded certain evidence from being presented to the jury, thereby preventing the jury from knowing all of the relevant facts of this case and causing the verdict to be tainted, such that only a new trial could remedy these cumulative errors.

A trial court's decision to admit or exclude evidence may not be reversed on appeal absent an abuse of discretion. See **Medine v. Roniger**, 2003-3436 (La. 7/2/04), 879 So.2d 706, 711. Louisiana Code of Evidence article 103(A) provides that error may not be predicated upon a ruling admitting or excluding evidence unless a substantial right of the party is affected. Louisiana Code of Evidence articles 402 and 403 require that evidence sought to be introduced be relevant, but relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

In reviewing evidentiary decisions of the trial court, the appellate court must consider whether the particular ruling complained of was erroneous and if so, whether the error prejudiced the complainant's cause, for unless it did, reversal is not warranted. **Brumfield v. Guilmino**, 93-0366 (La. App. 1st Cir. 03/11/94), 633 So.2d 903, 911, writ denied, 94-0806 (La. 05/06/94), 637 So.2d 1056. The determination is whether the error, when compared to the record in its totality, had a substantial effect on the outcome of the case. **Id.**

---

[4] Although defendants assigned as error the trial court's denial of their motion for new trial (Assignment Two) and JNOV (Assignment Six), defendants' motion and order for suspensive appeal failed to include the July 22, 2024 judgment containing these rulings. Nevertheless, the underlying merits of these two motions will necessarily be discussed in conjunction with the assignments of error from the February 8, 2024 judgment that is before us.

When the jury makes a factual finding based on admissible evidence, even though a different finding would have been reached by this court, that finding will not be reversed unless it is clearly wrong. **Maldonado v. Kiewit Louisiana Co.**, 2012-1868, 2012-1869 (La. App. 1st Cir. 5/30/14), 152 So.3d 909, 918, <u>writ denied</u>, 2014-2246 (La. 1/16/15), 157 So.3d 1129. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be manifestly erroneous. **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). However, if a trial judge commits consequential error by denying the jury relevant, admissible evidence, or by admitting evidence that should have been excluded, the fact-finding process is interdicted; thus, the verdict is tainted. <u>See</u> **McLean v. Hunter**, 495 So.2d 1298, 1304 (La. 1986).

If the admission or exclusion of evidence tainted a jury verdict, this court steps into the shoes of the fact-finder and conducts a *de novo* review of all of the admissible evidence. **Maldonado**, 152 So.3d at 918. *De novo* review should be limited to consequential errors, that is, errors which prejudiced or tainted the verdict rendered. **Id.** at 918-19. Absent a tainted verdict, review is limited to determining whether the jury committed manifest error. **Id.** at 919.

Defendants assert that pursuant to the trial court's rulings, they were "unable to fully support the prime theory of their case," which was that "[Mr. Holliday], his counsel, his wife [Ms. Hodges,] and his treating physician [Dr. Rathmann] engaged in a plan to control unnecessary medical work-up in order to inflate the award of damages in the instant case."

Specifically, in relation to Dr. Rathmann, defendants argue they were prevented from presenting evidence, a photograph of Dr. Rathmann with Mr. Holliday's attorney and another personal injury attorney, taken at a charity golfing event. Further, defendants argue they were prevented from eliciting testimony from Dr. Rathmann of his underlying relationship with Ms. Hodges in her capacity as a

5

paralegal, and Mr. Holliday's attorney, which would demonstrate Dr. Rathmann's bias towards plaintiffs generally. According to defendants, this showing of bias would further support defendants' theory that Dr. Rathmann's diagnosis of Mr. Holliday was not credible, and neither was Mr. Holliday's claim.

During trial, Dr. Rathmann, a chiropractor, testified that he initially met Mr. Holliday months prior to this accident, through Mr. Holliday's mother. Dr. Rathmann explained that his wife is a real estate agent and Mr. Holliday's mother stages homes, and the two women did business together, which is how he met Mr. Holliday. Medically speaking, Dr. Rathmann first examined Mr. Holliday in July 2019, approximately five months prior to the accident, when Mr. Holliday presented to him complaining of neck pain. Dr. Rathmann testified that Mr. Holliday responded well to treatment and after one follow up appointment, did not return.

On cross-examination, Dr. Rathmann testified that he has also treated Ms. Hodges and that he has known Mr. Holliday's attorney for years. Dr. Rathmann testified that he accepts referrals to his practice, but defendants were precluded from asking about whether Dr. Rathmann receives fringe benefits from attorneys for the treatment of those referrals. Defendants were also prohibited from asking Dr. Rathmann whether he knows Mr. Holliday's attorney socially.

As to Ms. Hodges, defendants assert it was error for the trial court to preclude their cross-examination of Ms. Hodges regarding her work history and depth of knowledge of personal injury claims. During Ms. Hodges' cross-examination, defendants did elicit testimony that Ms. Hodges was employed as a paralegal and that she has been a paralegal off and on for about eight years. Although defendants were precluded from asking Ms. Hodges about her work history, that information was nonetheless published to the jury during the re-cross examination of Mr. Holliday. Mr. Holliday testified that Ms. Hodges was employed by Mr. Holliday's counsel's law firm at the time of the accident; Mr. Holliday further testified that Ms.

6

Hodges had worked for a different personal injury law firm prior to and following that employment.

After a review of the record, it appears that almost all of the evidence defendants assert was erroneously excluded by the trial court was actually presented to the jury. The information defendants sought to reveal to the jury about Ms. Hodges, her chosen profession, and employment history with personal injury law firms, was made known to the jury, although perhaps without the desired effect. The jury was also able to learn that Dr. Rathmann takes referrals from different sources and that he has known Mr. Holliday's counsel for years. Likewise, the jury was apprised of the information that Dr. Rathmann knew Mr. Holliday through a personal connection and treated Mr. Holliday prior to this accident. The jury was ultimately made aware that following the accident, Mr. Holliday drove to his attorney's law firm, where his wife was employed as a paralegal, and saw a chiropractor that same day. The jury was free to make a factual determination based on the evidence. See **Maldonado**, 152 So.3d at 918. Thus, we find no error was committed by the trial court in any exclusion of evidence to the jury that would result in a tainted verdict and require a *de novo* review; likewise, we find no abuse of discretion on behalf of the trial court in these complained of evidentiary rulings. This assignment is without merit.

**Future Medical Expenses Award (Assignments of Error Three, Four, and Five)**

The remainder of defendants' assignments of error concern the amount of the jury's award of future medical expenses to Mr. Holliday. The proper standard for determining whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence that the future medical expense will be medically necessary. **Menard v. Lafayette Ins. Co.**, 2009-1869 (La. 3/16/10), 31 So.3d 996, 1006; **Waters v. Hebert**, 2019-0435 (La. App. 1st Cir. 11/20/19), 291 So.3d 278, 282. An award of future medical expenses is justified if there is medical testimony

7

that they are indicated and setting out their probable cost. However, when the need for future medical care has been demonstrated but cost is not susceptible of determination, the court may make a reasonable award. **Holliday v. United Services Automobile Association,** 569 So.2d 143, 146 (La. App. 1st Cir. 1990).

An award for future medical expenses is, in great measure, highly speculative, not susceptible to calculation with mathematical certainty, and generally turns on questions of credibility and inferences. See **Menard,** 31 So.3d at 1006. In accordance with well-established law, much discretion is left to the jury in its assessment of damages. See **Id.** (citing La. Civ. Code. art. 2324.1). As a determination of fact, a jury's assessment of quantum, or the appropriate amount of damages, is one entitled to great deference on review. See **Guillory v. Lee,** 2009-0075 (La. 6/26/09), 16 So.3d 1104, 1116. Future medical expenses are an item of special damages. See **Guillory v. Insurance Co. of North America,** 96-1084 (La. 4/8/97), 692 So.2d 1029, 1031-1032.

An appellate court, in reviewing a jury's factual conclusions with regard to special damages, must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the jury's conclusion, and the finding must be clearly wrong. **Kaiser v. Hardin,** 2006-2092 (La. 4/11/07), 953 So.2d 802, 810 (per curiam). This test requires a reviewing court to do more than simply review the record for some evidence that supports or controverts the jury's findings. **Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC,** 2014-2592 (La. 12/8/15), 193 So.3d 1110, 1116. The court must review the entire record to determine whether the jury's finding was clearly wrong or manifestly erroneous. See **Guillory,** 16 So.3d at 1118. The issue to be resolved on review is not whether the jury was right or wrong, but whether the jury's fact-finding conclusion was a reasonable one. **Menard,** 31 So.3d at 1007.

8

The only testimony provided to illustrate any future medical care and expense Mr. Holliday may incur came from Dr. Joseph Turnipseed, an interventional pain physician. Dr. Turnipseed began his testimony with his initial evaluation of Mr. Holliday, finding that the pain he was experiencing was from his facet joints along his spine in his lower back and neck. After unsuccessful treatment with steroid injections, Dr. Turnipseed stated that he next treated Mr. Holliday with radiofrequency ablation, or "nerve burns," wherein the nerve fibers that go to the facet joints are cauterized, so they temporarily do no transmit pain from the facet joints. Dr. Turnipseed testified that Mr. Holliday responded very well to these nerve burns, reporting about ninety percent pain relief, which has lasted about nine to ten months in his neck and thirteen or fourteen months in his lower back. However, Dr. Turnipseed stated that these procedures are not a permanent solution nor do they give a patient long-term relief, and their efficacy will wear off. Thus, Dr. Turnipseed testified he would continue the nerve burn treatments as long as Mr. Holliday got at least six months of relief by at least fifty percent from each treatment. Based on Mr. Holliday's response to the treatments thus far, and Dr. Turnipseed's own experience, he opined that Mr. Holliday could potentially receive another six or seven effective nerve burns, which would take him to about age thirty-seven. However, Dr. Turnipseed opined, because Mr. Holliday is suffering from chronic back and neck pain, which he will have for the rest of his life, he will necessarily require future treatment for pain relief.

Because any alternative future treatment of Mr. Holliday was several years out from the date of trial, Dr. Turnipseed testified that following the loss of efficacy of the nerve burns, he would attempt epidural steroid injections for pain relief, but those too lose efficacy over time. Thereafter, Dr. Turnipseed testified there were two general ways in which Mr. Holliday could seek relief. Mr. Holliday could be assessed by a surgeon to see if there would be a fix for his pain surgically.

Alternatively, Mr. Holliday could see if he is a candidate for a spinal cord stimulator, which Dr. Turnipseed described as a pacemaker for the spine. In order to determine candidacy for a permanent spinal cord stimulator, Dr. Turnipseed testified that Mr. Holliday would first be required to pass a psychological evaluation, and then he must respond positively to a trial implantation, none of which had occurred as of the date of trial. During cross-examination, Dr. Turnipseed testified that although he is not a psychologist, "more likely than not" Mr. Holliday will pass a psychological evaluation, and a spinal cord stimulator would likely provide relief. Regardless of the form, Dr. Turnipseed testified that Mr. Holliday will require some type of future treatment for his chronic neck and lower back pain, which pain will not dissipate and will probably only get worse.

Elizabeth Martina, a vocational rehabilitation counselor and life care planner, also testified at trial. Ms. Martina provided testimony regarding the present-day costs of Mr. Holliday's future medical treatments, finding the cost of seven nerve burns and any associated visits ranged in price anywhere from $130,927.45 to $276,724.16. Ms. Martina also testified, in regard to costs associated with a spinal cord stimulator implant, that a psychological evaluation costs anywhere from $227.58 up to $308.22; the trial for the spinal cord stimulator ranged in price from $23,499.00 to $70,430.00; and a permanent implantation procedure ranged in price anywhere from $87,585.00 up to $239,245.00.[5]

Mr. Ralph Litolff, a certified public accountant specializing in forensic accounting, specifically economic damages, also testified regarding the future costs of the nerve burns, potential epidural steroid injections, and the spinal cord stimulator and protocol. He provided the jury with a range of $536,326.00 to $1,526,314.00 for these procedures. On cross-examination, defendants asked Mr.

---

[5] Ms. Martina testified that the spinal cord stimulator would require three to four battery replacements over Mr. Holliday's lifetime, which ranged in cost from $226,754.10 up to $666,060.00.

10

Litolff for a calculation strictly for the remaining nerve burn treatments and follow-up steroid injections, to which Mr. Litolff provided a price range of $150,131.00 to $376,089.00.

Defendants argue that the jury's future medical expense damages award over the amount of $376,089.00 was not reasonable as the necessity of treatments past the nerve burns and epidural steroid injections was too speculative. Defendants specifically argue that Dr. Turnipseed was not qualified to discuss any type of surgical treatment, and the discussion of a spinal cord stimulator implant also depended on several uncertain results, *i.e.,* a positive psychological evaluation and response to a trial stimulator, to support a finding that the treatment would more probably than not occur and/or be therapeutic.

Defendants rely on several cases to support their argument that the testimony provided by Dr. Turnipseed was too speculative to be a basis for a future medical expense award higher than $376,089.00, including **Ketchum v. Roberts**, 2012-1885 (La. App. 1st Cir. 5/29/14), 2014 WL 3510694 (unpublished). In **Ketchum**, 2014 WL 3510694 at *20, this court found no clear error on behalf of the trial court's finding that plaintiff had failed to establish the need and cost for future medical care, where plaintiff's treating physician did not expressly state that plaintiff would need to continue taking pain medications to treat her injury or that she would need long-term pain management. While the doctor in **Ketchum** opined arthritis may develop due to plaintiffs' injuries, he did not state what future medical care or treatment would be required. Unlike the doctor in **Ketchum**, Dr. Turnipseed clearly testified that Mr. Holliday suffers from chronic pain in his neck and lower back, which will be present with him throughout his life and for which he will need medical treatment to alleviate, as well as the medical procedures or treatments Mr. Holliday will likely require in the future.

Defendants' reliance on **Flowers v. Miller**, 2010-1201 (La. App. 1st Cir. 3/25/11), 2011 WL 1225903 (unpublished), is also misplaced. In **Flowers**, 2011 WL 1225903 at *7, this court reduced an award for future medical expenses to a plaintiff who had not undergone any diagnostic testing, let alone begun any type of medical treatment for her injury, other than the use of pain medications. In the instant action, although Mr. Holliday has not been assessed for a spinal cord stimulator, the only testimony provided during trial was that his pain was not going away and his current treatment would become ineffective for his pain. Dr. Turnipseed, who performs spinal cord stimulator implantations, testified that a spinal cord stimulator will likely provide relief to Mr. Holliday.

Based on the evidence in the record, we have found it reasonable that the jury could find that Mr. Holliday's future medical treatment would entail more than seven additional nerve burns and several epidural injections. Therefore, we find assignment four to be without merit.

In light of this finding, we also find no error in the trial court's permitting the jury to hear the costs of future medical procedures as provided by Ms. Martina and Mr. Litolff. This assignment is also without merit.

Finally, defendants argue that the trial court erred in not granting their motion for directed verdict after Mr. Holliday's case-in-chief was completed. A directed verdict should only be granted when the facts and inferences point so strongly in favor of one party that the court believes reasonable people could not reach a contrary verdict. It is appropriate, not when there is a preponderance of evidence, but only when the evidence overwhelmingly points to one conclusion. **Hastings v. Baton Rouge General Hospital**, 498 So.2d 713, 718 (La. 1986). The basis of defendants' motion for directed verdict was that Mr. Holliday had not proven the necessity of certain future medical treatments such as a spinal cord stimulator or surgery, and therefore, no future medical expense amount should be awarded to Mr.

Holliday for those speculative procedures. In light of our finding that Dr. Turnipseed offered testimony supporting Mr. Holliday's need for future medical treatment, we find no error in the trial court's decision to deny defendants' motion for directed verdict. This assignment is without merit.

## CONCLUSION

For the aforementioned reasons, the February 8, 2024 judgment is affirmed. All costs of this appeal are assessed against appellants, Starr Indemnity & Liability Company, MMR Group, Inc., and Jeremy Bruser.

**AFFIRMED.**

WILLIAM J. HOLLIDAY

VERSUS

STARR INDEMNITY & LIABILITY COMPANY, MMR GROUP, INC., AND JEREMY BRUSER

---

**EDWARDS, J.,** *concurring.*

I agree the February 8, 2024 judgment should be affirmed. However, footnote 4 of the majority's opinion implies that, because defendants' motion and order for suspensive appeal did not include the July 22, 2024 judgment containing the trial court's rulings on defendants' motion for new trial and motion for JNOV, the July 22, 2024 judgment is not before us. I write separately to point out the July 22, 2024 judgment is properly before us.

In **Killebrew v. Cook,** 2023-0806 (La. App. 1 Cir. 4/19/24), 2024 WL 1694060 (unpublished), this court expressly addressed the issue of whether an appellant is entitled to seek review of the denial of a motion for JNOV and motion for new trial although the appellant did not refer to those rulings in the motion and order for appeal. The **Killebrew** court explicitly stated, "[T]he interlocutory denial of a motion for JNOV or a motion for new trial is subject to review on appeal in connection with the review of an appealable judgment in the same case." In so ruling, this court acknowledged that when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to him, in addition to the review of the final judgment. **Killebrew,** 2024 WL 1694060, *5 (citing **Landry v. Leonard J. Chabert Medical Center,** 2002-1559 (La. App. 1 Cir. 5/14/03), 858 So.3d 454, 461 n.4, writs denied,

2003-1748, 2003-1752 (La. 10/17/03), 855 So.2d 761); see also **Broussard v. Martin Operating Partnership**, 2011-1559 (La. App. 3 Cir. 11/21/12), 103 So.3d 713, 733-34, writ denied, 2013-0215 (La. 3/15/13), 109 So.3d 383, and writ denied sub nom. **Broussard v. Martin Operating Partnership, L.P.**, 2013-0249 (La. 3/15/13), 109 So.3d 383 (wherein the Third Circuit found no merit to a motion to dismiss appeal of denial of a motion for new trial and motion for JNOV despite those judgments not being referenced in the notice of appeal).

Like in **Killebrew**, the defendants in this case filed a timely motion and order for appeal but only referred to the February 8, 2024 judgment on the merits. Pursuant to this court's jurisprudence, however, the interlocutory denials of the defendants' motion for JNOV and motion for new trial are reviewable in connection with the February 8, 2024 judgment. Nevertheless, I find no error in the trial court's denial of defendants' motion for JNOV and motion for new trial. As such, I would affirm the trial court's July 22, 2024 judgment on these motions as well.

2